Howkx, J.,
delivered the opinion of the court:
This is a proceeding on behalf of the administrator of a deceased officer of the Marine Corps to recover of and from the defendants on behalf of the estate of the deceased officer as a disbursing officer on duty at Guam an amount of money that was deducted in the settlement of the accounts of Benj. B. Woog as such disbursing officer in charge of certain funds committed to him by authority of the United States. The findings show that there was a shortage in the funds officially *86 held by the disbursing officer to the extent of, the amount deducted and that the money was lost through the negligence or fault of the deceased official.
'■ The record presents a troublesome and exceedingly important question to the Military and Naval Establishments of the United States. The contention of the plaintiff is that the amount lost did not belong to the United States, but to the enlisted men, and that even if the funds were lost through the negligence or fault of the officer in charge there is no liability on the part of the officer because the funds did ■not cover property of the Government.
■" The question now is squarely before the court, whether the money lost was money in which the defendants had such an interest that they could legally hold the officer responsible ■for the loss.
• '■ The Revised Statutes provide in section 1766 that “ No money shall be paid to any person for his compensation who is in' arrears to the United States, until he has accounted for ■and paid into the Treasury all sums for which he may be •liable.” As the deduction has been made on account of an 'indebtedness charged to certain funds at Guam and not •directly due to the United States, it is argued that there was ho authority in law for the paymaster of the Marine Corps 'to make any deduction or setoff against plaintiff’s intestate’s ¡pay.
The findings show that the post exchange store had been •established by the commandant of the island of Guam and reihained under his supervision and control during the occurrences giving rise to the controversy. On June 20, 1904, the Secretary of the Navy authorized the establishment of post exchanges at all marine barracks except where post traders were established. The Navy Regulations in force .when the shortage occurred provided that an officer ap•pointéd by the commanding officer should be post treasurer; •open* an account with the funds in his charge subject to ^inspection; and to make payments of purchases on the warrants of the commanding officer, and when relieved from ,"4uty as post treasurer to-close his accounts and turn them .■oyer to the commandihg officer to audit. The Navy Regulations also provided how the company fund should be kept *87 and of what it should consist arising out of moneys received from the various sources enumerated. Every financial transaction of which a company fund was capable was required to be submitted in itemized form to be audited. The post funds and company funds in the present case were identical with the post exchange and bakery funds belonging to a company of marines at Guam. The question then is whether the Government has such an interest in the funds belonging to a marine detachment as to justify a deduction of the pay of the officer in charge in order to reimburse the enlisted men for their losses.
Plaintiff prays in the alternative for a decree in accordance with paragraph 8 of section 1059 and section 1062 of the Revised Statutes. These sections are as follows:
“ Seo. 1059. The Court of Claims shall have jurisdiction to hear and determine the following matters:
$$$$$$$
“ Third. The claim of any paymaster, quartermaster, commissary of subsistence, or other disbursing officer of the United States, or of his administrators or executors, for relief from reponsibility on account of capture or otherwise, while in the line of his duty, of Government funds, vouchers, records, or papers in his charge, and for which such officer was and is held responsible.”
“ Seo. 1062. Whenever the Court of Claims ascertains the facts of any loss by any paymaster, quartermaster, commissary of subsistence, or other disbursing officer, in the cases hereinbefore provided, fo have been without fault or negligence on the part of such officer, it shall make a decree setting forth the amount thereof, and upon such decree the proper accounting officers of the Treasury shall allow to such officer the amount so decreed, as a credit in the settlement of his accounts.”
When a post exchange stock is bought and the accounts are settled the money derived from the sales is turned into the Public Treasury to the credit of the account of the commissary officer in charge of the stock. It was shown in Dugan v. United States, 34 C. Cls. R., 458, that on the withdrawal of the troops from any post the exchange stock, as provided by regulations, must be reduced as far as possible and converted into cash and distributed equitably under the *88 direction of the exchange council, not among the individual soldiers but among the organizations who are members, and the officer in charge must make a final report through the Military or Naval Establishments. The receipt of moneys and purchases of stock in the establishment, maintenance, management, and closing up of post exchanges are under control of Government agencies for purposes designed by the Government in the creation of such exchanges. This is true with respect to the same by and under regulations of both the Military and Naval Establishments.
From what has been said it will be seen that the post exchange is not a voluntary association, but an institution established by the Government for the convenience of the officers and more particularly for the discipline of the enlisted men. The consent of the officers and men for the establishment and maintenance of an exchange is by no means necessary. The regulations settle that. As shown in Dugan’s case, supra, the Government acts through its officers under authority of the regulations, and the officer put in charge receives and disburses all the funds, and whatever profit that may accrue is paid to and held by the officer in command of such organization as a company fund. Regulations of the Navy Department, sections 1035 and 1040, inclusive, provide for the establishment of post exchanges. These regulations conflict with no law.
Section 161 of the Revised Statutes authorizes the head of each department “to prescribe regulations not inconsistent with law for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and the preservation of its records, papers, and property appertaining to it.”
Departmental regulations need not be promulgated in any set form, nor in writing. 216 U. S., 462.
In the case of United States v. McDaniel, 7 Pet., 380, it was declared of departmental regulations: “Of necessity usages have been established in every department of the Government, which have become a kind of common law and regulate the rights and duties of those who act within their respective limits.”
*89 In United States v. Eliason, 16 Pet., 802, it appears that regulations made by the military establishment must be received as acts of the Executive, and that such regulations can neither be questioned nor defied.
In Benson v. Henkel, 198 U. S., 11, a party was charged with a conspiracy to commit an offense by bribing certain clerks of the Land Office to divulge the contents of certain reports. But these clerks had not been forbidden by any statute to give out such information. Nevertheless, it was said that it was clearly within the power of the court to say whether every duty to be performed by an official must be designated by statute, or whether it may not be within the power of the head of a department to prescribe regulations for the conduct of the business of his office and the custody of papers, a breach of which might be treated as an act in violation of the lawful duty of an official clerk.
Along the same line and by the same authority another analogy appears. Section 5451 of the Revised Statutes makes it a crime to bribe or offer to bribe “ any officer of the United States,” or “ any person acting for or on behalf of the United States, in any official function, conduct, or by authority of any department or officer of the Government; * * * to induce him to do or omit to do any act in violation of his official duty.” But the Supreme Court has held that regulations outside of that statute consistent with it may be enforced, because they have the force of law. The bribery of an officer to violate such regulations is included únder. the statute which makes it a crime to bribe such officer to violate his lawful duty.
Again, a conspiracy to defraud the United States under section 5440 of the Revised Statutes does not necessarily involve a direct pecuniary loss to the United States. But the statute includes any conspiracy to impair, obstruct, or defeat the lawful function of any department of the Government.
Supplemental to this the authorities will show that it is not essential to charge or prove an actual financial or property loss to the Government to make a case under the statute relating to conspiracies to defraud the United States. Hyde v. Shine, 199 U. S., 81; United States v. Keitel, 211 U. S., 394; Curley v. United States, 130 Fed. Rep., 1; Mc- *90 Gregor v. United States, 184 Fed. Rep., 195; Haas v. Henkel, supra.
In United States v. Plyler, 222 U. S., 15, it appears that a party bad been indicted for defrauding the United States. The specific charge was for forging vouchers required upon examination by the Civil Service Commission certifying to the character and physical capacity of the defendant and for presenting the same to the commission. The court below held that the acts were not frauds against the United States within the contemplation of section 5418, Revised Statutes, and discharged the defendant. The Government excepted and the Supreme Court held that although section 5418, Revised Statutes, prohibited the forging of written vouchers, it did not make it essential, to hold the defendant guilty, to charge or prove an actual financial or property loss to make a case of defrauding the United States.
Property rights of the Government are by no means all of its rights. Financial losses to the Government are but incidents to the discharge of those functions for which the Government was established. The proper discharge of these functions is of the utmost concern, regardless of the matter of financial loss to the Treasury of the United States.
In Franklin v. United States, 216 U. S., 561, it appears that embezzlements were charged of certain personal, property of the cadets at the West Point Military Reservation in New York in violation of section 5891, Revised Statutes, as amended by subsequent act; that among the indictments against the officer was one charging grand larceny under section 2, chapter 576, of the act of July 7,1898. The defendant moved in arrest of judgment on the ground that the last-named act did not confer jurisdiction or legal power for the court in which the’ indictments were found to hear, try, or determine the same,- inasmuch as the punishment for the offense alleged was provided for against an officer by section 1342 of the Revised Statutes, and that exclusive jurisdiction over the offense by' the Constitution and laws, when committed by a person subject to military jurisdiction, became vested in the; properly -constituted and authorized courts-martial of the United States; and also because-under section *91 5438, Eevised Statutes, the facts alleged in the various counts did not charge a criminal offense against the United States. The appellate court, in holding that the sixty-second article of war did not vest exclusive jurisdiction in courts-martial, but did give civil courts concurrent jurisdiction over all offenses committed by a military officer which might be punished under the provisions of that article also held that the indictments charging embezzlement of the personal property of the cadets at the reservation were valid. And the court said that the language of article 62 of section 5438, Eevised Statutes, and of section 2 of the act of July 7, 1898, demonstrated the intention of Congress that the jurisdiction of the civil courts was concurrent with that of courts-martial.
The Franklin decision sustains the proposition that an embezzlement of money committed to a military disbursing officer by public authority is an offense triable before either the civil or military jurisdiction.
There was no such offense at common law as embezzlement, but it is an offense strictly statutory. There was a shortage of money, however, which had come to the hands of the officer named in this case by direction of the Government. The funds received by him came into his keeping not in his private capacity as an individual, but as a disbursing agent of the Government for the marines. When these funds were received by this disbursing officer the funds so received were for the use and benefit of the-men by the act of the United States. Can the Government, or any court of the Government, now be so unjust to these enlisted men as to deprive them of'that which became their due by refusing to charge the amount of the losses to the proper custodian who by neglect and want of care caused the losses? Assuredly not, because the Government constituted* The-officer the trustee •for safekeeping the funds. * :
For the purposes of this case it is perhaps going too far to say that the men whose money was riot accounted,for (by the officer who held it) could be reimbursed directly from the .Public Treasury. At all events; it is not necessary to decide that there is direct responsibility to the men by the Government', because that question-is not before us in this action. *92 It is not going too far to say that there arose direct responsibility on the part of the disbursing officer as .custodian and trustee for the funds not accounted for. Indeed, there can be no question that the sentence of a court-martial could have been operative on his arrears of pay for any and all service rendered by him to the United States, and the sentence could have gone so far as to dismiss the officer from the service altogether.
Guam having been ceded to the United States by the treaty of Paris of December 10, 1898, was necessarily governed by the military power of this country, because the island has never been organized as a Territory. Those acts of Congress which provide for the punishment of offenses not specially provided for by any law of the United States and which also provide for the trial of such offenses in courts of the United States Territories provided with organized territorial government do not exclude the exercise of the military authority to punish offenders by virtue of the regulations.
Considering all the circumstances and the tenor and scope of the decisions of the court of last resort, this court is of opinion that it was competent for the proper marine superiors and the accounting officers of the Treasury to withhold payments of plaintiff’s intestate accounts until .the officer or his representative should establish that the money committed to his care was not lost by or through fault- or negligence of such custodian.
The case of Kyle v. United States, 46 C. Cls. R., 197, presented the question of the right of a private to recover money which he had paid into the post fund. The money had been paid by the private in consideration of his'being, excused from the duties of an enlisted man > and being- allowed to carry on the business of a barber. The council of administration at a military post having recommended a tax of $10 a month upon the post barber and the barber having acquiesced in the condition imposed by the tax, this court held that the payments made by him into the funds must be deemed voluntary and not recoverable by him. All that appears in that case bearing upon the present matter is that *93 the United States are not responsible to persons making contributions to the post fund. Of course, the Government is not responsible from its Treasury to the men who pay money into the post fund, but where the Government provides for a disbursing officer to take charge of the funds the officer becomes responsible to the men under the regulations of the Navy Department.
The material fact in the Kyle case is essentially different from the material fact presented by the present matter. The amount paid by Kyle, an enlisted man, was no part of his pay as an enlisted marine, nor was it deducted from his pay. The sum paid by Kyle was voluntary and was properly accounted for under the Kegulations.
In the present matter the disbursing officer of the Government received the money of the enlisted men and it was not properly accounted for under the Navy Kegulations.
If the funds in charge of the disbursing officer do not come within the terms of paragraph 3 of section 1059 and section 1062, Devised Statutes, then there is no jurisdiction for the court to grant relief.
But jurisdiction here must be taken not merely because petitioner has recognized and invoked the proper authority of the court under the statute which has conferred the requisite equity power to afford relief if the officer is shown to be without fault, but also because the section of the statute mentioned is obligatory.
It is true that in the case at bar there does appear to have been an investigation supplemented by the findings of a naval board which met the approval of the Secretary of the Navy; and it is also true that the decision of a naval tribunal acting within the scope of its lawful powers can not be reviewed or set aside by the courts. Mullan v. United States, 212 U. S., 516. It is likewise true that those in the naval service of the United States military law is due process and that courts can neither command nor regulate the Army and Navy. Reaves v. Ainsworth, 219 U. S., 296. But the finding of the board, which met the approval of the Secretary of the Navy, only recommended that the disbursing officer be held responsible and that the amount of the loss be deducted from any money that might be due to the officer responsible *94 for the shortage. On this finding the ofiicer might have been court-martialed, but the finding was not a finality. Moreover, there was no forfeiture provided for nor could the declaration of the investigating board operate to take from the officer his pay, as it is well settled that the pay due to an officer can only be forfeited by the sentence of a court-martial.
The court is of opinion that the statute under which we are taking jurisdiction requires us to make an independent investigation and to afford relief irrespective of the' findings of any board. Inasmuch as the findings show that the officer was at fault, and did not properly account for the funds which came to his hands, relief under the statute must be denied.
Petition dismissed.