[S. F. No. 14739. In Bank.—May 1, 1933.]

THE PEOPLE, etc., Appellant, v. STANDARD OIL COMPANY OF CALIFORNIA (a Corporation), Respondent.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Appellant.

Pillsbury, Madison & Sutro, Felix T. Smith and V. K. Butler, Jr., for Respondent.

Geo. J. Hatfield and I. M. Peckham, United States Attorneys, as *Amici Curiae* on behalf of Respondent.

THE COURT.—This action is by the People of the State of California to recover from defendant a balance due for excise taxes imposed by the Act of 1923 (Stats. 1923, p. 571, chap. 267), as amended by the Statutes of 1927, pages 1309 (chap. 716) and 1565 (chap. 795), based upon sales of gasoline to and deliveries at the army post exchange located on the Presidio military reservation at San Francisco. The defendant had judgment in the court below and plaintiff prosecutes this appeal.

The case arises upon an agreed statement of facts, which show that beginning about July 1, 1929, and ending September 30th of the same year, defendant sold and delivered to said post exchange a certain quantity of motor vehicle fuel; that such gasoline was carried by defendant in barrels and tank trucks to the exchange and there delivered, defendant bearing the expense of and assuming the risk in such transportation; that the Presidio was established as

a military post under Spanish dominion in 1776; was continued as such by the republic of Mexico and was ceded to the United States in 1848 by the treaty of Guadalupe Hidalgo; that in 1850, by executive order, it was reserved for public purposes; that said order was modified in 1851, from which year it has been continuously occupied by the United States as a military reservation; that, moreover, on March 2, 1897, the legislature of California ceded to the United States government sole legislative jurisdiction over said reservation; that the Presidio post exchange at all times herein was an organization doing business under army regulation No. 210-65, dated June 29, 1929, as modified by circular 57 of the War Department, dated October 31, 1929; that defendant duly reported said sales to the state board of equalization, as required, but declined to pay the tax due thereon, claiming that a sale to the post exchange was not to be considered in computing said tax.

The pertinent provisions of the said act are: Section 1c (Stats. 1923, p. 572), which, so far as here material, defines a distributor to be one who refines, manufactures, produces or compounds motor vehicle fuel in this state and sells the same in this state (also covers other classes not here involved). Section 3 (Stats. 1923, p. 572) provides: "Every distributor shall . . . pay a license tax to the state . . . for each gallon of motor vehicle fuel refined, manufactured, produced or compounded by such distributor *in this state* and sold and delivered by him *in this state,* or imported by such distributor into and distributed or sold by him in this state otherwise than in the original package . . . " Section 10, as amended in 1927 (Stats. 1927, p. 1309), provides for certain exemptions as follows: "The provisions of this act requiring the payment of license fees shall not be held or construed to apply to motor vehicle fuel imported into this state in interstate or foreign commerce and intended to be sold in the original and unbroken tank cars or other original receptacles, containers or packages and so sold while the same are in interstate or foreign commerce nor to any motor vehicle fuel exported or sold for exportation and exported for use outside this state, nor to any motor vehicle fuel *sold to the government of the United States or any department thereof for official use of said government* but every

distributor shall be required to report such exports and sales to the state board of equalization in such detail as that board may require.''

■ We thus have presented the question whether sales and deliveries of gasoline at a military reservation under the sole jurisdiction of the United States, made to the army post exchange therein, are to be excluded in fixing the license fees to be paid by the distributor under said act of the legislature. Or, in other words, is the post exchange at the Presidio military reservation in San Francisco entitled to purchase gasoline in this state at a price less than that paid by other persons admittedly coming under the act?

It is at once conceded, as already implied, that the military reservation in question is territory over which the United States exercises sole legislative authority. (*United States* v. *Watkins,* 22 Fed. (2d) 437; *People* v. *Mouse,* 203 Cal. 782 [265 Pac. 944].) It is contended that by reason of this concession a sale consummated on it is a sale outside the state, as though consummated in Nevada or Oregon.

■ It is our conclusion that the manifest intention of the act was to include all sales completed within the geographical confines of the state and for this purpose said military reservation was to be included like all other territory. The holding to the contrary in *United States* v. *Cordy,* 58 Fed. (2d) 1013, is based upon the peculiar provisions of the act there involved, under which it was held by the District Court that the language of the act itself excluded sales made upon military reservations. This holding does not aid in the solution of the problem before us.

■ It is next urged that a sale to the army post exchange is a sale to a department of the government of the United States for official use of said government. Manifestly these sales are neither to a ''department'' of the government nor for official use. The gasoline was sold to the exchange for resale to certain classes of persons for their private consumption. We have no hesitation in concluding that the legislative intent was to include the sales in question in computing the tax. But these observations do not determine the cause.

We are pointed to the decision of the Supreme Court of the United States in the case of *Panhandle Oil Co.* v. *Missis-*

*sippi,* 277 U. S. 218 [48 Sup. Ct. 451, 452, 72 L. Ed. 857, 56 A. L. R. 583], where the court used language showing that an important question is here involved. There, as here, the state of Mississippi imposed an excise tax upon distributors of gasoline measured by sales within that state. The state sued the oil company to recover balances represented by sales to the United States for use of its Coast Guard service operating in the Gulf of Mexico and for its veterans' hospital at Gulfport. The sales were made directly to the government and the court held that said statute was inoperative as to them, using language in part as follows: ''The states may not burden or interfere with the exertion of national power or make it a source of revenue, or take the funds raised or tax the means used for the performance of federal functions . . . The amount of money claimed by the state rises and falls precisely as does the quantity of gasoline so secured by the government. It depends immediately upon the number of gallons. The necessary operation of these enactments when so construed is directly to retard, impede and burden the exertion by the United States of its constitutional powers to operate the fleet and hospital . . . '' This was a five-four decision of the court; Justices Holmes, Brandeis, McReynolds and Stone dissented, Justices Holmes and McReynolds writing opinions.

But it seems to us that a well-founded distinction may be found between the sales there involved and sales to an army post exchange. The commanding officer of an army post is not required to organize the post exchange unless there is need for it or unless the units present desire to participate therein or unless the personnel is sufficient to profitably maintain and support such an institution. In other words, a post exchange is at most but a government agency, designed to operate for the welfare of the troops such activities as a general store, meat or vegetable market or gasoline station, or a restaurant, gymnasium, recreation room, library or theater. Thus it is not properly described by the word ''department'' of the government in its activities. It is largely a co-operative institution, intended to supply the needs and promote the moral and civic betterment of the troops at the post.

It is supervised by an exchange council, composed of the commanding officers of the respective units represented in

the organization. The funds of the exchange are not public moneys within the meaning of the Revised Statutes (Rev. Stats., secs. 5488, 5490, 5492). The exchange is not instituted by the aid of funds from the United States nor are its avails paid into the treasury. It is a voluntary, unincorporated, co-operative association in which all units share the benefits and all assume a position analogous to that of partners. In the event of the inability of the post exchange to pay its debts, the organizations which participate in it are supposed themselves to pay off all such obligations in proportion to their respective interests in the exchange. Neither the government nor the officers of the post wherein the exchange is located are liable for its debts. The property of the post exchange is not to be treated as property belonging to the United States. The exchange itself is liable for certain federal taxes, such as the stamp tax imposed by the Internal Revenue Act, the freight tax imposed by the War Revenue Act of 1917, a floor tax on tobacco under the Revenue Act of 1919, section 702; sales of ice-cream and soft drinks by a post exchange are subject to tax under the same act. From these and other observations that might be made, touching the nature of the organization of an army post exchange, we are of the opinion that it is an organization largely engaged in business of a private nature and that sales to it should not be beyond the reach of the taxing power of the state wherein it is located and that it is not one of those agencies through which the federal government directly exercises its constitutional or sovereign power.

The case of *Thirty-first Infantry Post Exchange* v. *Posadas,* 54 Philippine Reports, 866, 876, throws some light on the question before us. There the post exchange drew into question the validity of a tax levied by the government of the Philippine Islands on sales by local merchants to the exchange. The court sustained the tax and distinguished the Panhandle Oil Case, *supra,* and, among other distinguishing features, it pointed out the following: "There the right of the United States to make purchases was derived from the United States Constitution; here the right of the army post exchange to make purchases is derived from army regulations and army practice. There the sale was made to instrumentalities authorized by the Constitution,

which consumed the merchandise; here the sales were made to army post exchanges not so constitutionally authorized, which merely acted as intermediaries. There it must be taken for granted that the Coast Guard fleet and the veterans' hospital were constructed and operated by government funds; here, except that buildings are provided by the United States government for the army post exchange, the latter are not so constructed and operated.''

Again in *Keane* v. *United States*, 272 Fed. 577, it was held that a conspiracy to defraud the United States was not made out by charging a conspiracy to defraud an army post exchange. We quote the syllabus: ''A military post exchange, which is a voluntary association of companies, detachments, or other army units at military posts, permitted, but not required, by a special regulation of the war department for the purpose of conducting for the benefit of the members of such units what is in effect a cooperative store and place of entertainment, with their own funds, and for whose contracts and obligations the United States is not responsible, and in whose funds it has no interest, though its business is conducted by an officer detailed for the purpose, held not a 'department of the government', and proof of a conspiracy to defraud a post exchange held not to sustain an indictment, under Criminal Code, section 37, for conspiracy to defraud the United States.''

Such cases as *Surplus Trading Co.* v. *Cook*, 281 U. S. 647 [50 Sup. Ct. 455, 74 L. Ed. 1091], and *Concessions Co.* v. *Morris*, 109 Wash. 46 [186 Pac. 655], and others of that class which relate ,to taxation of personal property having its situs upon a military reservation in the exclusive jurisdiction of the United States are not in point and throw little, if any, light upon the question here involved.

Lastly, it is contended that the deliveries from San Francisco to the Presidio reservation constitute interstate commerce within the exclusive jurisdiction of the United States and that the state of California may not impede it by this form of taxation. The transactions in question were purely intrastate. There is no force in the contention that a sale and transportation from a point in California without the reservation to the exchange on the reservation is inter-

state commerce. We are pointed to no federal authority to this effect and, in reason, none should exist holding that a military reservation under the exclusive legislative authority of the United States is to be considered in the same status as the District of Columbia or Alaska, or other territory having an autonomous existence. Under the plain holding in the case of *Eastern Air Transport, Inc.*, v. *South Carolina Tax Commission*, 285 U. S. 147. [52 Sup. Ct. 340, 76 L. Ed. 673], interstate commerce would not be involved even if the sales were made of gasoline to be used thereafter by persons engaged exclusively in interstate transportation of goods.

The judgment is reversed, with directions to the court below to enter judgment for plaintiff as prayed.

Rehearing denied.