[Sac. No. 5493. In Bank. Nov. 29, 1941.]

STANDARD OIL COMPANY OF CALIFORNIA (a Corporation), Appellant, v. CHARLES G. JOHNSON, as State Treasurer, Respondent.

Pillsbury, Madison & Sutro, Felix T. Smith, Sigvald Nielson and Frank J. Kockritz, Jr., for Appellant.

Earl Warren, Attorney General, and H. H. Linney and Adrian A. Kragen, Deputies Attorney General, for Respondent.

CURTIS, J.—During the month of March of the present year the Standard Oil Company of California, plaintiff herein, sold several thousand gallons of gasoline to the United States Army Post Exchanges located on recently acquired government reservations, not under the exclusive jurisdiction of the federal government, at Camp McQuaide, Watsonville, California, Campo, California, and Seeley, California. None of said post exchanges was, at any of the dates on which said sales were made, located on any United States reservation over which the federal government had exclusive jurisdiction to legislate on these sales of gasoline or other merchandise. Said post exchanges were organized and owned at all

times herein mentioned, and were operated and did business under Army Regulations No. 210–65, of date June 29, 1929, and Army Regulations 210–65, C 3, of date March 9, 1940.

Plaintiff paid a tax on said sales amounting to the sum of $526.08 to the State of California. Said payment was made under protest and was accompanied by a verified written demand for the repayment to plaintiff of said sum on the ground that said tax was illegal for the reasons stated in said protest and demand. The reasons so stated were that said gasoline was sold to the United States Government or a department thereof for official use and was therefore exempt from the tax under section 10 of the Motor Vehicle Fuel License Tax Act, Deering's Gen. Laws, 1937, Act 2964; and furthermore, that the State of California is without right or authority to impose a tax on gasoline sold to post exchanges since they are instruments and agencies of the federal government. The officials of the state refused to acquiesce in the demand of plaintiff, and no part of said sum of $526.08 has been repaid to plaintiff. Thereupon plaintiff instituted this action against the defendant, the Treasurer of the State of California, to recover said amount. A trial was had and judgment was rendered in favor of the defendant, and plaintiff has appealed therefrom.

There is no dispute as to the facts. The controversy between the parties hereto involves simply questions of law, and they may be briefly stated as follows: Has the State of California the right and power to impose such tax on gasoline sold to United States Army Post Exchanges; and if the state has the right to impose such a tax, have sales to army post exchanges been exempted from the payment thereof by section 10 of the Motor Vehicle Fuel License Tax Act?

This action in many of its essential features is like the case of *People* v. *Standard Oil Company of California,* 218 Cal. 123 [22 Pac. (2d) 2]. That case arose out of sales of gasoline by the Standard Oil Company to United States Post Exchanges located within the Presidio military reservation at San Francisco. The Standard Oil Company in that case refused to pay the tax, and the action was brought to compel its payment. The tax in that case and the tax in the present case were levied and imposed under practically the same statute of this state. Our attention has not been called to any material change in the legal status of military post exchanges

since the rendition of the decision in that case. So what was said by this court in that case upon the questions involved in the present action would be most persuasive of the decision of those questions.

In that case it was contended by the Standard Oil Company that sales made to military post exchanges were exempt from the state tax by virtue of the provisions of section 10 of the state statute hereinbefore referred to. In reply to the contention that "a sale to the army post exchange is a sale to a department of the government of the United States for official use of said government," our former opinion held at page 126: "Manifestly these sales are neither to a 'department' of the government nor for official use. The gasoline was sold to the exchange for resale to certain classes of persons for their private consumption. We have no hesitation in concluding that the legislative intent was to include the sales in question in computing the tax. But these observations do not determine the cause."

The decision then passes to a consideration of the nature of army post exchanges and of the power of the state to tax sales made to such exchanges, and upon that question concludes at page 128: "From these and other observations that might be made, touching the nature of the organization of an army post exchange, we are of the opinion that it is an organization largely engaged in business of a private nature and that sales to it should not be beyond the reach of the taxing power of the state wherein it is located and that it is not one of those agencies through which the federal government directly exercises its constitutional or sovereign power."

We further held in that opinion that the tax on such sales was collectible even though the sales were made within the territorial limits of the Presidio, over which the State of California had exclusive legislative jurisdiction. An appeal was taken to the Supreme Court of the United States, and the judgment of this court was reversed on the ground that the sales were made without the jurisdiction of the state and "within territory subject only to the control of the United States." (*Standard Oil Company* v. *California*, 291 U. S. 242 [54 Sup. Ct. 381, 78 L. Ed. 775].) No reference was made in the opinion of the United States Supreme Court to any question decided in our opinion except the one involving territorial jurisdiction over the place where the sales were

made. That portion of our decision holding that a military post exchange was not an instrumentality or department of the federal government, and that sales of gasoline to it were subject to the statutes of this state, was unaffected by the decision of the Supreme Court of the United States and must stand as the latest expression of this court upon those two questions, which are the only questions involved in this appeal.

The conclusion at which we arrived in the Standard Oil Company case, as hereinbefore set forth and which was not considered or passed upon by the Supreme Court of the United States, finds support in the decisions of the federal courts and in those of the United States Court of Claims, although the cases considering that question are not without conflict.

For a reversal of the judgment herein in favor of the respondent, the appellant cites and relies upon the following cases: *Dugan* v. *United States,* 34 Ct. Cl. 458; *Woog, Administrator* v. *United States,* 48 Ct. Cl. 80; *Post Exchange, 31st Infantry* v. *Keeney, Reg. No. 30,920,* decided August 20, 1929, Supreme Court of the Philippine Islands; *United States* v. *Query,* 21 Fed. Supp. 784; *United States* v. *Query,* 37 Fed. Supp. 972; and *United States* v. *Cordy,* 58 Fed. (2d) 1013.

It may be conceded that the Dugan and Woog cases support the contention of appellant, and the same may be said respecting the Keeney case from the Supreme Court of the Philippine Islands, although the last-mentioned case may have been overruled by the case of *Thirty-First Infantry Post Exchange* v. *Posadas,* 54 Phil. Rep. 866, hereinafter referred to. The cases of *United States* v. *Query,* 21 Fed. Supp. 784, and *United States* v. *Cordy, supra,* are readily distinguishable from our present case. While the earlier Query case was decided by a court composed of three judges and the questions involved therein were thoroughly and carefully considered, it involved the right of the State of South Carolina to tax a Civilian Conservation Corps camp exchange. Such a camp had its existence by virtue of congressional legislation and federal funds were used to pay the expense in connection with its conduct, operation and maintenance. As shown by our decision in the Standard Oil Company case, *supra,* an army post exchange ''is not instituted by the aid of funds from the United States nor are its avails paid into

the treasury. . . . Neither the government nor the officers of the post wherein the exchange is located are liable for its debts.'' (218 Cal. 128.) The case of *United States* v. *Cordy, supra,* involved the right of the State of Maryland to levy a tax upon the sale of gasoline to a ''Y'' military post exchange on a military reservation over which the State of Maryland had ceded exclusive jurisdiction to the United States Government. That case involved the precise point decided by the United States Supreme Court in *Standard Oil Company* v. *California, supra.* The later Query case, 37 Fed. Supp. 972, was also a decision by a court of three judges and unquestionably supports the position of appellant. It was decided in March of this year. It contains an exhaustive review of the authorities bearing upon the legal status of army post exchanges and holds that they are federal instrumentalities and immune from state taxation.

As against these authorities in favor of the appellant, the respondent relies upon two decisions of the circuit courts of appeal and one from the Supreme Court of the Philippine Islands. In the first of these cases, *Keane* v. *United States,* 272 Fed. 577, Keane was charged with conspiracy to defraud the United States by padding invoices for meat sold by him to an army post exchange. He appealed from a judgment of conviction and the circuit court of appeal reversed the judgment, holding at page 588: ''Clearly the post exchange described in the indictment in this case is not such a lawful department of Government. Therefore this post exchange is not such an institution as that a fraud upon the United States can arise from or be involved in any transaction concerning it. . . . '' While this decision was by a divided court, it is not shown that any appeal was taken therefrom. Apparently the government was satisfied with the conclusion reached therein.

*Pan-American Petroleum Corporation* v. *State of Alabama,* 67 Fed. (2d) 590, a decision of the circuit court of appeal and the second case relied upon by respondent, involved the right of the State of Alabama to impose a tax upon gasoline sold to a military post exchange. After pointing out that the tax was not on the sale, but upon the withdrawal of the gasoline from storage, the court stated at page 596: ''Furthermore, a post exchange is, of course, not the government; nor is it a department or instrumentality thereof. On the contrary, a post exchange is a voluntary, unincorporated, co-operative

association of army organizations in which all share as partners in the profits and losses. The government has no share in the profits, and is not bound by the losses. We are therefore of opinion that sales made by appellant to the post exchanges . . . are not exempt from the state excise taxes. *People* v. *Standard Oil Co.* [218 Cal. 123] (Cal. Sup.), 22 P. (2d) 2.'' A petition for a writ of *certiorari* to review this decision was denied. (291 U. S. 670 [54 Sup. Ct. 454, 78 L. Ed. 1060].)

The third case relied upon by respondent in support of the judgment is the case of *Thirty-First Infantry Post Exchange* v. *Posadas, supra.* It involved the right to collect a tax levied by the local government upon sales made to army post exchanges and ''ship's stores.'' (The latter are organized within the navy in the same manner and for the same purpose as post exchanges are established in the army.) The court sustained the tax in the following language: ''We rule that an Army Post Exchange, although an agency within the United States Army cannot secure exemption from taxation for merchants who make sales to the Post Exchange.'' The United States Supreme Court denied a petition to review this decision by *certiorari.* (283 U. S. 839 [51 Sup. Ct. 487, 75 L. Ed. 1449].) This decision would apparently overrule the case of *Post Exchange, 31st Infantry* v. *Keeney, supra,* decided by the Supreme Court of the Philippine Islands and relied upon by the appellant.

We do not find that the Supreme Court of the United States has ever directly passed upon the legal status of military post exchanges, yet the question has been before it on three different occasions: First, in the *Thirty-First Infantry Post Exchange* v. *Posadas, supra,* when it declined to review the judgment of the Supreme Court of the Philippine Islands, involving a tax on merchandise sold to a post exchange; Second, in our own case of *Standard Oil Company* v. *California, supra,* where it held the tax void because the same was made within territory over which this state had ceded full legislative authority to the United States, but declined to pass upon the legal status of an army post exchange, that is, whether it is or is not a department or instrumentality of the federal government; and Third, in the case of *Pan-American Petroleum Corporation* v. *State of Alabama, supra,* wherein

the circuit court of appeal sustained a tax levied by the state upon sales of gasoline made to a post exchange.

In a very recent decision of the Board of Tax Appeals for the District of Columbia, in a proceeding entitled *"Post Exchange, The Army War College* v. *District of Columbia,"* decided July 24, 1941, a tax assessed by the Assessor of the District of Columbia upon two automobiles belonging to said post exchange was sustained. After an extensive review of all the authorities cited above and many others, the board of tax appeals arrived at the following conclusion: "After giving consideration to the decisions, upon which the petitioner and respondent rely, and a study of the Army Regulations pertaining to post exchanges, the Board is of the opinion that the petitioner is not an agency, instrumentality or department of the United States, but is a voluntary cooperative association of army organizations in which all share as partners in the profits and losses, and in which the United States has neither a share in the profits, nor liability for the losses. The Board realizes that there are authorities opposed to this ruling, but believes that the reasoning of the decisions which support the Board's conclusion is more persuasive. That being so, it follows that the tax here involved was not erroneously collected by the District from the petitioner. . . . "

It seems to us after a study of the authorities upon the question before us, that the great weight of authority is in favor of the ruling of the trial court, holding that an army post exchange is not an instrumentality or department of the federal government, but, on the other hand, "is an organization largely engaged in business of a private nature and that sales to it should not be beyond the reach of the taxing power of the state wherein it is located." (*People* v. *Standard Oil Company of California, supra,* at p. 128.)

Since the rendition of the opinion in the case of *Standard Oil Company* v. *California, supra,* holding a sale to a post exchange within a territory over which the state has ceded to the federal government full legislative authority, is immune from a state tax, Congress has enacted a statute which removes the immunity from taxes on sales made within a federal area. (54 U. S. Statutes, p. 1059, 4 U. S. C. A. sec. 13 (a).) This change in the federal law, however, would not in any manner affect the decision in this case, as it is

expressly alleged that none of the army post exchanges to which the plaintiff sold gasoline, and on which it paid a tax, is located on United States military reservations, over which the federal government has exclusive jurisdiction to legislate.

For the reasons herein stated the judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Carter, J., concurred. Houser, J., concurred in the judgment.