

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

GERALD C. MANN

~~JOHN REEVES SHEPPARD~~
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4392
Re:   Are Army Post Exchanges
subject to the Texas
Store Tax.

You have requested the opinion of this department as to whether or not Army Post Exchanges are subject to the Texas Store tax.

Army Post Exchanges have been established by the United States Army for many years past and, therefore, they have acquired a well defined and essential position in the Army.  Army Post Exchanges as they now exist are created in accordance with the United States Army Regulations No. 210-65 promulgated by the War Department.  Said Army regulations are lengthy and in detail.  We believe they are well stated and summarized in the case of United States v. Query, 37 F. Supp. 972, as follows:

> "As set forth in the findings of fact this day filed herein, the Post Exchange at Fort Jackson is created and functions under United States Army regulations No. 210-65, C-1 and C-3, promulgated by the Secretary of War, under the authority given him by Congress.  By these regulations the commanding officer of each post is directed to establish and maintain a Post Exchange whenever there is need for it, membership in which is limited to companies, troops, batteries, aero squadrons, or other similarly organized units and detachments.  The commanding officer of each army post has complete jurisdiction over the conduct of all Post Exchanges within his command, subject to the general supervision of superior authority, and is held strictly responsible for their efficient operation and for the enforcement of army regulations applicable to Post Exchanges.  Under these regulations sales are made only to officers and enlisted men of the regular army, army nurses, contract surgeons, members of the Reserve Corps while on active duty, officers and enlisted men of the National Guard

when in federal service, civilian employees authorized for service abroad, having a status recognized by the War Department as part of an expeditionary force, and civilians employed or serving at military posts.

"The primary purposes of an exchange are to supply troops at the lowest possible prices with articles of ordinary use, wear and consumption not supplied by the Government, to afford them means of rational recreation and amusement, and through exchange profits to provide, when necessary, the means for improving the company messes. The commanding officer of each army post is charged with the maintenance of recreational athletics, entertainments, service clubs, libraries, and community cooperation which are to be centered about the Post Exchange which provides the financial support necessary for their maintenance. The Post Exchange is governed by a council consisting of a Post Exchange officer and commanding officer of each company, troop, battery, hospital detachment, or similar organization participating therein. The Post Exchange officer is detailed by the commanding officer and receives no compensation for his services other than his regular Army pay.

"Under the Regulations of the Secretary of War the duties imposed upon officers in the management of exchange affairs are as binding upon them as any duty to which they may be assigned under competent military authority. Five per cent of Post Exchange profits, if any, are set aside as a fund which is divided among the organizations which constitute the membership of the exchange, that is, the companies, troops, batteries, squadrons or units and detachments, and not individuals, and the balance is set aside as a portion of the recreation fund for the laying out, preparing and cultivating gardens, for the purchase of books, newspapers, periodicals, stationery, and similar articles for the exchange library, gymnastic appliances, and prizes for athletic sports. These funds belong to no particular individual and those portions which are set aside for the participating organizations have membership in the Post Exchanges are held by such member organizations in trust, subject to the orders of the Secretary of War or congressional command. Where Post Exchange buildings have not been provided for from funds otherwise available, the commanding officer is authorized to construct temporary buildings by the labor of troops and the use of necessary teams and such tools, windows, sashes, doors and other material as can be spared by the Quar-

termaster Corps of the Army. The Post Quartermaster is authorized to sell to the exchange at cost any subsistence stores except exceptional articles, to furnish heating and suitable apparatus therefor for Post Exchange rooms and buildings, and to provide supplies for interior and exterior illumination. Messages on Post Exchange business over telegraph, radio and cable lines owned and operated by the War Department may be transmitted without charge, and penalty envelopes may be used in the mails in conducting Post Exchange correspondence. United States Army Regulations specify what books and records shall be kept by Post Exchanges and the manner of auditing them."

The Texas Store Tax, commonly referred to as the Chain store tax, is codified by Vernon as Article 1111d of Vernon's Annotated Penal Code. It provides in part as follows:

"Section 2. Any person agent, receiver, trustee, firm, corporation, association or copartnership desiring to operate, maintain, open or establish a store or mercantile establishment in this State shall apply to the Comptroller of Public Accounts for a license so do do.* * * "

" * * *

"Section 5. Every person, agent, receiver, trustee, firm, corporation, association or copartnership opening, establishing, operating or maintaining one or more stores or mercantile establishments within this State, under the same general management, or ownership, shall pay the license fees hereinafter prescribed for the privilege of opening, establishing, operating or maintaining such stores or mercantile establishments. * * *

"Section 7. The term 'store' as used in this Act shall be construed to mean and include any store or stores or any mercantile establishment or establishments not specifically exempted within this Act which are owned, operated, maintained, or controlled by the same person, agent, receiver, trustee, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold, at retail or wholesale."

There can be no doubt but that the Army Post Exchanges sell the type of commodities which would bring them

within the definition of the term "store" as defined in Section 7 above and that they are being "operated and maintained" in this state.

The chain store tax is an occupation tax. The Commission of Appeals of Texas in Hurt v. Cooper, 110 S. W. (2d) 899, stated as follows:

" * * * We experience no difficulty in reaching the conclusion that the so-called license fees levied thereby are primarily occupation taxes."

The tax is levied directly on the individual, corporation, association, etc., that opens and operates the stores. If the Army Post Exchanges are governmental instrumentalities they are opened and operated by the United States Government.

The United States Supreme Court in McCulloch v. Maryland, 4 Wheat 316, held that the State of Maryland could not tax the operation by the United States Government of a bank in Maryland. Mr. Chief Justice Marshall, in speaking for the Court, concluded as follows:

"But this is a tax on the operations of the bank, and is, consequently, a tax on the operation of an instrument employed by the government of the union to carry its powers into execution. Such a tax must be unconstitutional."

It follows, of necessity, that if the Army Post Exchanges are instruments employed by the Government of the United States to carry one of its powers into execution they are exempt from the Texas tax, supra, which taxes the operation of stores.

One of the powers given Congress by Section 8 of the Constitution of the United States is as follows:

"To raise and support armies, but no appropriation of money to that use shall be for a longer term than two years; * * * To make rules for the Government and regulation of the land and naval forces; * * * ."

If Congress had enacted legislation which specifically authorized the creation and maintenance of Army Post Exchanges there would be no doubt but that Congress would be acting within the above-quoted power granted to it. We

think that the operation of Army Post Exchanges is a very vital feature of the support and maintenance of the Army. Through them a service is rendered to the army personnel which service must of necessity be furnished them because of their being under army orders and supervision twenty-four hours a day. We believe that the supplying at the lowest possible price of certain articles of ordinary use, wear and consumption which are not supplied by the Government to the men in the army is the exercise of a governmental function authorized by the Constitution just as is the furnishing to them by the Government of food and shelter.

A more serious question, however, is presented by the fact that Congress has not enacted specific legislation for the creation of Army Post Exchanges but that the same are in existence pursuant to regulations issued by the Secretary of War. In this connection the history of the existence of Army Post Exchanges is important. A short summary of the same is contained in United States v. Query, supra, and reads as follows:

In 1870, Acts of July 15, 1870, c. 294, § 20, 16 Stat. 319, 10 U.S.C.A. § 16, Congress directed that the Secretary of War should prepare a system of general regulations for the administration of the affairs of the Army, which, when approved by Congress, should be enforced until altered or revoked by the same authority. In 1875, Act of March 1, 1875, c. 115, 18 Stat. 337, 10 U.S.C.A. § 16, Congress repealed that part of the Act which required that such regulations be reported to and approved by that body, and authorized the President to make and publish regulations for the government of the Army in accordance with existing laws. On July 25, 1895, Post Exchanges were established under regulations promulgated by the Secretary of War. * * * "

"Congressional approval of the creation and operation of Army Post Exchanges will be found in the several appropriation acts, commencing with the year 1903 until the present time. In 1903, Act of March 2, 1903, c.975, 32 Stat.927, 937,938, Congress appropriated $500,000 'for continuing the construction, equipment, and maintenance of suitable buildings at military posts and stations for the conduct of the post exchange, school, library, reading, lunch, amusement rooms and gymnasium, to be expended in the discretion and under the direction of the Secretary of War,' and

every year thereafter various appropriations for the same purposes were made. In 1933 and 1934 Congress required the balances of disbanded organization funds, amounting to $298,068, which had been derived from Post Exchange activities covered into the federal Treasury. Act of March 4, 1933, ch. 281, 47 Stat. 1573; Act of June 26, 1934, c. 756, 48 Stat. 1224, 1229, 31 U.S.C.A. ∫ 725g."

The duties of the Chief of Staff of the Army have been defined by Congress and are contained in 10 U.S.C.A., Sec. 33. Said Section reads as follows:

"The Chief of Staff shall preside over the War Department General Staff and, under the direction of the President, or of the Secretary of War under the direction of the President, shall cause to be made, by the War Department General Staff, the necessary plans for recruiting, organizing, supplying, equipping, mobilizing, training, and demobilizing the Army of the United States, and for the use of the military forces for national defense. He shall transmit to the Secretary of War the plans and recommendations prepared for that purpose by the War Department General Staff and advise him in regard thereto; upon the approval of such plans or recommendations by the Secretary of War, he shall act as the agent of the Secretary of War in carrying the same into effect. (June 3, 1916, c. 134, ∫ 5, 39 Stat. 167; June 4, 1920, c. 227, subchapter 1, ∫ 5, 41 Stat. 764."

Section 16 of 10 U.S.C.A. reads as follows:

"The President is authorized to make and publish regulations for the government of the Army in accordance with existing laws, which shall be in force and obeyed until altered or revoked by the same authority: Provided, That said regulations shall not be inconsistent with the laws of the United States. (July 15, 1870, c. 294, ∫ 20, 16 Stat. 319; Mar. 1, 1875, c. 115, 18 Stat. 337.)

In accordance with the above authority granted by Congress Army Regulations No. 210-65 were issued on July 1, 1941. Said regulations were promulgated by General G. C. Marshall, Chief of Staff, by order of the Secretary of War and they supersede all previous letters and instructions

pertaining to exchanges. Said regulations read in part as follows:

"1. Purposes - a. Exchanges are established for the following purposes; (1) To supply the persons to whom sales are authorized (par. 13), at the lowest possible prices, with articles of ordinary use, wear, and consumption not supplied by the Government.

"(2) To afford to military personnel facilities for comfort, recreation, and amusement to include, as may be desirable, the financial support and maintenance of recreational athletics, entertainments, service clubs, libraries, and community cooperation within the limits prescribed in AR 210-50

"(3) To provide, when necessary, the means for improving organization messes. b. Exchanges should be conducted in such a manner as to be of real assistance and convenience to enlisted men and not as large profit making institutions..

"2. Establishment - a. Whenever conditions make it desirable and practicable, the commanding officer of a post, camp, or station will establish and maintain an exchange to include such number of branches, departments, and subordinate activities thereof as may be necessary to serve the military personnel."

Further, it is a well settled rule of law that rules and regulations like the above have the force of law the same as specific Congressional enactments if they pertain to matters within the rule making power delegated to the authority promulgating the same. See Ex parte Reed, 100 U. S. 13; Denby v. Berry, 263 U. S. 29; and Smith v. Whitney, 116 U. S. 167.

Congress has delegated the authority to make rules and regulations for the Government of the Army. It has placed on the Chief of Staff, as agent of the Secretary of War, the duty of supplying the Army of the United States. Army Post Exchanges have been established pursuant to such authority for the purpose of supplying to the Army personnel certain commodities not supplied by the Army itself. We believe, therefore, that the regulations issued concerning Army Post Exchanges were promulgated under the authority of Congress. Our opinion in this respect is bolstered by the fact that from time to time Congress has appropriated money for the construction and maintenance of buildings to be used as post exchanges. Another Congressional recognition of the existence of Post Exchanges existing by order of the Secretary of War is the

Buck Resolution which was passed by the 76th Congress, Third Session. It reads in part as follows:

"Section 3. (a) * * *

"(b) A person shall be deemed to be an authorized purchaser under this section only with respect to purchases which he is permitted to make from commissaries, ship's stores, or voluntary unincorporated organizations of Army or Navy personnel, under regulations promulgated by the Secretary of War or the Secretary of the Navy."

The case of United States v. Cordy, 58 F. (2d) 1013, is authority for the proposition that Army Post Exchanges are maintained pursuant to statutory authority. The court stated as' follows:

"Army Post Exchanges are mediums established and maintained by army regulations, pursuant to statutory authority, for the convenience of both officers and enlisted men whereby, at reasonable cost to them, certain creature comforts in the way of clothing, food, etc., as well as recreation and amusement, not otherwise provided by regulations, may be secured." (Emphasis ours)

There is a conflict between the courts which have passed on the question of whether or not these exchanges are governmental instrumentalities. In 1921 the Circuit Court of Appeals, Fourth Circuit, decided the case of Keane v. United States, 272 Fed. 577. The Court consisted of two Circuit Judges and one District Judge. The District Judge wrote the main opinion of the Court and held that an Army Post Exchange as it was then known was not a "department of the government" within the meaning of a Federal Criminal Statute concerning conspiracies to defraud the United States. One of the Circuit Judges, however, concurred in the reversal of the trial court's decision but disagreed with the majority of the Court as to the status of a post exchange. Circuit Judge Woods stated as follows:

" * * * The system of post exchanges was a government undertaking of the War Department and is universally recognized as an adjunct of that department. It had its foundation and has its existence in an order of the Secretary of War for the promotion of the welfare of the soldiers of the United States army. Regulations for the management of all post exchanges are prescribed by authority of the

President, as Commander in Chief of the Army, through the Secretary of War. The exchanges are conducted by officers and soldiers designated and assigned as such under authority of the Secretary of War to perform that official military duty. Every post commander is required by the regulations to institute a post exchange. No soldier or other person has any authority or control of the affairs of post exchanges, except by military order. The regulations for their management have force of law under Section 161 of the Revised Statutes of the United States. U.S. v. Eaton, 144 U.S. 677, 12 S. Ct. 764, 36 L. Ed. 591; U.S. v. Foster, 233 U.S. 515, 34 Sup.Ct. 666, 58 L. Ed. 1074.

"The mere facts that the government does not assume the debts or claim the profits, and that soldiers are not required to join the post exchanges, are not controlling; for even the distribution of their profits and assets and the payment of their debts are regulated by the War Department. It can hardly be doubted that an officer refusing to perform the military duty of establishing or maintaining a post exchange would be subject to court-martial."

The last statement above was apparently made in answer to the factor relied on most by the majority of the court; that is, that the United States Government was not liable for the debts nor entitled to the profits of the post exchanges.

In 1933 the Supreme Court of California decided the case of People v. Standard Oil Co. of California, 22 Pac. (2d) 2. The Court held that Army Post Exchanges were voluntary, unincorporated, cooperative associations for whose debts the government was not liable. Therefore, the Court concluded, sales of gasoline to them were not sales "to the government of the United States or any department thereof for official use of said government." The Supreme Court of the United States reversed the California Supreme Court in Standard Oil Co. of California, 291 U. S. 242, 78 L. Ed. 775, on the grounds that the military reservation grounds had been ceded to the United States and, therefore, California's tax was not collectible thereon. The court did not pass on the status of an Army Post Exchange, however.

Later in 1933 the Circuit Court of Appeals, Fifth Circuit, decided the case of Pan American Petroleum Corporation

v. Alabama, 67 Fed. (2d) 590. The question involved in the case was the right of Alabama to tax gasoline sold to post exchanges. The Court concluded, first, that the Alabama tax became due and payable upon the withdrawl of gasoline from storage within the state whether the same be for sale or other use. Secondly, the Court relied on the California Supreme Court case of People v. Standard Oil Co., supra, and stated as follows:

> " * * * Furthermore, a post exchange is, of course, not the government; nor is it a department or instrumentality thereof. On the contrary, a post exchange is a voluntary, unincorporated, cooperative association of army organizations in which all share as partners in the profits and losses. The government has no share in the profits, and is not bound by the losses. We are therefore of opinion that sales made by appellant to the post exchanges at Camp McCellan and Maxwell Field are not exempt from the state exise taxes. People v. Standard Oil Co. (Cal. Sup.) 22 P. (2d) 2."

In 1937 the Federal District Court, Eastern District, South Carolina, decided the case of United States v. Query, 21 Fed. Supp. 784. In that case the court passed on the status of Civilian Conservation Corps camp exchanges which were established by specific congressional authority to perform the same service and purpose that Army Post Exchanges serve in the Army. The Court concluded as follows:

> "In performing its constitutional functions, the United States must operate through an instrumentality or agency. Here it operates through the agency of the camp exchange as an integral part of the Civilian Conversation Corps. The tax falls directly upon the camp exchange and the provisions of the state statute directly affect this instrumentality of the federal government selected for the exercise of its powers. The state tax in effect is upon the government's transactions in the exercise of its lawful power. The Civilian Conservation Corps camp exchange is of such a character and so intimately connected with the exercise of the operation of the Civilian Conservation Corps, the exercise of a power granted by the Act of Congress authorized by the Federal Constitution, that it is such a direct interference with the functions of the government itself as to be clearly beyond the taxing power of the state."

In March, 1941, the same District Court decided another case also styled United States v. Query, reported in 37 Fed. Supp. 972. Excerpts from the Court's opinion concerning the facts surrounding the operation of post exchanges and their history have been previously quoted herein. The Court made what we think is the most thorough analysis of the status of Army Post Exchanges made in any of the cases and concluded that they were Federal instrumentalities. On June 27, 1941, the Circuit Court of Appeals, Fourth Circuit, affirmed the judgment of the lower court upon the opinion of the District Judge. See Query v. United States 121 F. (2d) 631. Application for writ of certiorari was made in which both parties asked the Supreme Court of the United States to review the case and pass on the question because of its public importance. On November 17, 1941, the Supreme Court denied the petition. It is important to note that the same Circuit Court of Appeals that affirmed the Query case decided the Keane case back in 1921. In effect, therefore, the earlier case is overruled on this point.

After the Query case had been decided in the District Court, but prior to the time the Supreme Court denied application for writ of certiorari therein, the Supreme Court of California decided the case of Standard Oil Co. of California v. Johnson, 119 P. (2d) 329. The California Court reviewed the authorities and concluded as follows:

> "It seems to us after a study of the authorities upon the question before us, that the great weight of authority is in favor of the ruling of the trial court, holding that an army post exchange is not an instrumentality or department of the federal government, but on the other hand, 'is an organization largely engaged in business of a private nature and that sales to it should not be beyond the reach of the taxing power of the state wherein it is located.' People v. Standard Oil Company of California, supra, 218 Cal. at page 128, 22 P. (2d) at page 4."

All of the cases that hold post exchanges not to be Federal instrumentalities seem to base their conclusion on the assumption that they are voluntary cooperative associations in which the United States has neither a share in the profits nor is liable for the losses. While it is true that the Army Regulations specifically provide that the creditors of an exchange may not look beyond the assets

of the exchange for the satisfaction of their debts the expenditure of the profits in certain specific ways to inure to the benefit of the Army is also required.  In this way the United States Government is receiving the profits just as much as if they were deposited in the Federal Treasury, in our opinion.  In this connection we agree with the statement of the Federal District Court in Falls City Brewing Co. v. Reeves, 40 F. Supp. 35, as follows:

" * * * It is clear from the facts in this case that a Post Exchange is an integral part of an army organization and is an essential factor in military life.  They are not purely voluntary organizations, as is contended by the State in this case, but they are set up, organized and operated pursuant to military authority.  It is the duty of the commanding officer of the post to establish and maintain a post exchange whenever there is a need for it; the duties of a post exchange officer are his official duties as an army officer, and he receives entire compensation for the performance of these duties in the salary received by him from the United States Government as an army officer.  The post exchange officer, the post exchange steward, and the post exchange assistants perform their respective duties under official assignments of duty; the option does not exist for them to refuse the assignment.  The Post Exchange occupies a building constructed and maintained by the Federal Government and equipped with federal funds.  The general welfare and morale of the personnel in a military training camp is a very important part of any military program looking to a well-trained and efficient army.  The view is now well established that adequate recreational facilities for soldiers in training are as important as adequate drill fields.  Much energy and large expenditures are devoted by those in civilian life in providing such facilities for soldiers in nearby posts.  Some expenditures for this purpose come by way of direct appropriations by the United States Congress, but a large portion can be attributed to the proceeds that are made available by the operations of the Post Exchange, which proceeds inure to the benefit of the Government thereby relieving the Government from additional appropriations to this extent. * * * Considered in this

light it is certainly a subordinate or
auxiliary agency and falls easily within
the accepted definition of an instrumental-
ity of the United States."

However, even if the statement frequently used by
some of the Courts were true that post exchanges are volun-
tary, unincorporated associations in whose profits the
Government has no interest and for whose losses the Govern-
ment is not liable, we still do not understand that this
would prevent them from being Government instrumentalities
if, as we conclude, they are performing a Governmental
function under Congressional authority.

These recent Federal cases are in accord with the
recent Federal administrative rulings. On August 5, 1939,
Acting Attorney General of the United States, Robert H.
Jackson, ruled that Army Post Exchanges were Government
instrumentalities and he cited the additional cases of Thomas
B. Dugan v. U. S. 34 Ct. Cls. 458, and Henry Woog, Adminis-
trator, vs. U. S., 48 Ct. Cls. 80. The Social Security Tax
Unit, Bureau of Internal Revenue, has ruled the same way.
See 298-S.S.T. 269. The Army Regulations themselves, pro-
mulgated by order of the Secretary of War, state that ex-
changes are Governmental instrumentalities.

In reaching our conclusion we are inclined to
follow the recent Federal decisions rather than the older
cases and the California Supreme Court. We do so for two
reasons. In the first place the question discussed herein
is essentially a Federal question and the interpretation
placed on such a question by the Federal courts and by the
Federal administrative agencies should be given more weight
than the decisions of a state court. This is especially
true because the case of United States v. Query, supra,
directly passed on this question and the Supreme Court of
the United States denied an application for writ of
certiorari in November, 1941. We adopt this view for the
second reason that in our opinion a full analysis of the
operation of Army Post Exchanges leads to the conclusion
that they are Federal instrumentalities performing a
necessary and vital Governmental function under Congressional
authority. As such they are exempt from the payment of the
Texas Chain Store Tax.

Our Opinion No. 0-2317, which was written prior
to the decisions in the Query case and the Falls City

Honorable George H. Sheppard, Page 14, (O-4392)


Brewing Company case, insofar as the same holds post ex-
changes not to be Federal instrumentalities, is hereby ex-
pressly overruled.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By   /s/ Billy Goldberg
         Billy Goldberg
                Assistant

BG:ej:eac

APPROVED FEB 13, 1942

/s/ Grover Sellers

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE

BY B.W.B.
CHAIRMAN