### UNITED STATES et al. v. QUERY et al.

District Court, E. D. South Carolina, Columbia Division.

March 31, 1941.

Claud N. Sapp, U. S. Atty., of Columbia, S. C. (Louis M. Shimel, Asst. U. S. Atty., of Charleston, S. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Andrew D. Sharpe, and Berryman Green, Sp. Assts. to the Atty. Gen., on the brief), for plaintiffs.

John M. Daniel, Atty. Gen. for South Carolina, and Claude K. Wingate, of Columbia, S. C., Gen. Counsel, South Carolina Tax Commission, for defendants.

Before PARKER, Circuit Judge, and HAYES and LUMPKIN, District Judges.

LUMPKIN, District Judge.

This is an action brought by the United States, and the Commanding General and Post Exchange Officer of Fort Jackson, South Carolina, for a declaratory judgment and to enjoin the members of the South Carolina Tax Commission from enforcing the provisions of Act No. 574, Acts of 1928 of the General Assembly of the State of South Carolina, Act March 10, 1928, 35 St. at Large, p. 1089, as amended, with respect to the activities of the United States Army Post Exchange at Fort Jackson.

By stipulation of the parties, it was agreed that if the complainants should prevail with respect to Post Exchanges, the relief granted by the court is to be applicable to the Marine Corps Post Exchanges, ships' stores, officers' clubs and non-commissioned officers' clubs described in the amended bill of complaint.

A District Court of three judges heard the case on complainants' application for interlocutory and permanent relief, and it was agreed that the hearing should be on the merits for a final decree.

The action is brought under Section 274d of the Judicial Code, as amended, 28 U.S. C.A. § 400, and under Section 266 of the Judicial Code, 28 U.S.C.A. § 380, interlocutory and permanent injunctions being sought by the complainants.

The question involved is whether under the provisions of Public Act No. 819, 76th Cong., 3d Sess., 4 U.S.C.A. § 12 et seq., hereinafter referred to as the federal act, the taxes imposed by Act No. 574 of the Acts of 1928 of the General Assembly of the State of South Carolina, as amended, hereinafter referred to as the state statute, are applicable to and collectible from the United States Army Post Exchange at Fort Jackson, Richland County, South Carolina.

The material facts as they appear in the pleadings and stipulation of the parties are as follows:

As set forth in the findings of fact this day filed herein, the Post Exchange at Fort Jackson is created and functions under United States Army Regulations No. 210–65, C–1, and C–3, promulgated by the Secretary of War, under the authority given him by Congress. By these regulations the com-

manding officer of each post is directed to establish and maintain a Post Exchange whenever there is need for it, membership in which is limited to companies, troops, batteries, aero squadrons, or other similarly organized units and detachments. The commanding officer of each army post has complete jurisdiction over the conduct of all Post Exchanges within his command, subject to the general supervision of superior authority, and is held strictly responsible for their efficient operation and for the enforcement of army regulations applicable to Post Exchanges. Under these regulations sales are made only to officers and enlisted men of the regular army, army nurses, contract surgeons, members of the Reserve Corps while on active duty, officers and enlisted men of the National Guard when in federal service, civilian employees authorized for service abroad, having a status recognized by the War Department as part of an expeditionary force, and civilians employed or serving at military posts.

The primary purposes of an exchange are to supply troops at the lowest possible prices with articles of ordinary use, wear and consumption not supplied by the Government, to afford them means of rational recreation and amusement, and through exchange profits to provide, when necessary, the means for improving the company messes. The commanding officer of each army post is charged with the maintenance of recreational athletics, entertainments, service clubs, libraries, and community co-operation which are to be centered about the Post Exchange which provides the financial support necessary for their maintenance. The Post Exchange is governed by a council consisting of a Post Exchange officer and commanding officer of each company, troop, battery, hospital detachment, or similar organization participating therein. The Post Exchange officer is detailed by the commanding officer and receives no compensation for his services other than his regular Army pay.

Under the Regulations of the Secretary of War the duties imposed upon officers in the management of exchange affairs are as binding upon them as any duty to which they may be assigned under competent military authority. Five per cent. of Post Exchange profits, if any, are set aside as a fund which is divided among the organizations which constitute the membership of the exchange, that is, the companies, troops, batteries, squadrons or units and detachments, and not individuals, and the balance is set aside as a portion of the recreation fund for the laying out, preparing and cultivating gardens, for the purchase of books, newspapers, periodicals, stationery, and similar articles for the exchange library, gymnastic appliances, and prizes for athletic sports. These funds belong to no particular individual and those portions which are set aside for the participating organizations having membership in the Post Exchange are held by such member organizations in trust, subject to the orders of the Secretary of War or congressional command. Where Post Exchange buildings have not been provided for from funds otherwise available, the commanding officer is authorized to construct temporary buildings by the labor of troops and the use of necessary teams and such tools, windows, sashes, doors and other material as can be spared by the Quartermaster Corps of the Army. The Post Quartermaster is authorized to sell to the exchange at cost any subsistence stores except exceptional articles, to furnish heating and suitable apparatus therefor for Post Exchange rooms and buildings, and to provide supplies for interior and exterior illumination. Messages on Post Exchange business over telegraph, radio, and cable lines owned and operated by the War Department may be transmitted without charge, and penalty envelopes may be used in the mails in conducting Post Exchange correspondence. United States Army Regulations specify what books and records shall be kept by Post Exchanges and the manner of auditing them.

The state statute imposes a license tax upon every person for the exercise of the privilege of engaging in selling within the State certain articles among them being beer, wine, tobacco products, soft drinks, playing cards, and candy. In addition to the license tax graduated in accordance with the volume of the sales, that statute necessitates the procurement by the licensee of a license for each place of business operated by him. The statute is implemented by a power of revocation of license and of seizure of the alleged illicit product together with the seizure of vehicles, not common carriers, bearing such product. A broad regulatory power is vested in the Commission whereunder it is privileged to enter upon the premises of a vendor, whether a licensee or not, and examine his books and records. The Commission is further empowered to promulgate rules and regulations under the statute, governing its enforcement, the violation of which will re-

sult in fine or imprisonment. In addition those persons procuring licenses are required to maintain extensive files recording minutely the transactions allegedly embraced within the statute. In the instance of the sale of soft drinks the licensee is required to maintain records of all such transactions for a period of not less than two years from the date of each such transaction.

Subsection (a) of Section 1 of the federal act, 4 U.S.C.A. § 13(a), provides that no person shall be relieved from liability for payment of any sales or use tax levied by any State on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a federal area. The act further provides as follows:

"Sec. 3. (a) The provisions of sections 1 [13] and 2 [14] of this Act [title] shall not be deemed to authorize the levy or collection of any tax on or from the United States or any instrumentality thereof, or the levy or collection of any tax with respect to sale, purchase, storage, or use of tangible personal property sold by the United States or any instrumentality thereof to any authorized purchaser.

"(b) A person shall be deemed to be an authorized purchaser under this section only with respect to purchases which he is permitted to make from commissaries, ship's stores, or voluntary unincorporated organizations of Army or Navy personnel, under regulations promulgated by the Secretary of War or the Secretary of the Navy." 4 U.S. C.A. § 15.

The defendants have since January 1, 1941, the effective date of the federal act, insisted that the activities of the Post Exchange in reference to the articles enumerated in the state statute are subject to the provisions of that statute, and have threatened to enforce the provisions of that statute with respect to Post Exchange activities at Fort Jackson. The complainants, however, have refused to admit the applicability of the tax imposed by the state statute and have directed that no license taxes upon the activities of the Post Exchange be paid to the South Carolina Tax Commission.

■ We are of opinion that the provisions of the state statute are not applicable to the activities of the Post Exchange, that the federal act does not give to the defendants the power to enforce such provisions against such activities, and that the order of the defendants to enforce the provisions of the state statute against such activities

and their threat to enforce and their attempts to enforce the same constitute an interference with the activities of the United States, and are unconstitutional.

In the case of United States v. Query, et al., 21 F.Supp. 784, this court, sitting as a three-judge court, passed upon the question of the relationship of a Post Exchange of the Civilian Conservation Corps with the federal government and, holding that a Civilian Conservation Corps Post Exchange was a federal instrumentality, enjoined the defendants from enforcing the provisions of the state statute herein involved as against the Post Exchange. It is contended that while the Civilian Conservation Corps Post Exchange was created by statute, there is no act of Congress specifically authorizing the creation and operation of Post Exchanges by the United States Army. A study of the history and character of both exchanges leads to the conclusion that there is no difference in their respective functions. At the hearing upon the bills to establish a Civilian Conservation Corps before the Committee on Education and Labor, U. S. Senate, 75 Cong. 1st Sess., the Director of Emergency Conservation Work recommended a provision in the bill authorizing the creation of Post Exchanges "just like the post exchange the Army possesses" in order that such Post Exchange should be "on the same basis as the post exchanges on the Army reservation." Senate Hearings before the Committee on Education and Labor, on S. 2102, 75th Cong., 1st Sess., pp. 48, 49. In compliance with this request Congress provided the statutory authority asked for by the Director for the creation and operation of Civilian Conservation Corps Post Exchanges.

■ In 1870, Act of July 15, 1870, c. 294, § 20, 16 Stat. 319, 10 U.S.C.A. § 16, Congress directed that the Secretary of War should prepare a system of general regulations for the administration of the affairs of the Army, which, when approved by Congress, should be enforced until altered or revoked by the same authority. In 1875, Act of March 1, 1875, c. 115, 18 Stat. 337, 10 U.S. C.A. § 16, Congress repealed that part of the act which required that such regulations be reported to and approved by that body, and authorized the President to make and publish regulations for the government of the Army in accordance with existing laws. On July 25, 1895, Post Exchanges were established under regulations promulgated by the Secretary of War. Those regulations

976

have the force of law. United States v. Freeman, 3 How. 556, 566, 11 L.Ed. 724; Gratiot v. United States, 4 How. 80, 118, 11 L.Ed. 884.

■ Congressional approval of the creation and operation of Army Post Exchanges will be found in the several appropriation acts, commencing with the year 1903 until the present time. In 1903, Act of March 2, 1903, c. 975, 32 Stat. 927, 937, 938, Congress appropriated $500,000 "for continuing the construction, equipment, and maintenance of suitable buildings at military posts and stations for the conduct of the post exchange, school, library, reading, lunch, amusement rooms, and gymnasium, to be expended in the discretion and under the direction of the Secretary of War", and every year thereafter various appropriations for the same purposes were made. In 1933 and 1934 Congress required the balances of disbanded organization funds, amounting to $298,068, which had been derived from Post Exchange activities covered into the federal Treasury. Act of March 4, 1933, c. 281, 47 Stat. 1573; Act of June 26, 1934, c. 756, 48 Stat. 1224, 1229, 31 U.S.C.A. § 725g.

By the enactment of these statutes from time to time, Congress recognized and validated the functions of the Post Exchanges, and in effect confirmed and approved the regulations promulgated by the Secretary of War. Swayne & Hoyt, Ltd., v. United States, 300 U.S. 297, 57 S.Ct. 478, 81 L.Ed. 659.

Support for the views herein expressed is found in the decisions of the Court of Claims and in the long-continued administrative practice.

In Dugan v. United States, 34 Ct.Cl. 458, and in Woog, Adm'r, v. United States, 48 Ct.Cl. 80, the Court of Claims held that a Post Exchange was an instrumentality of the federal government, engaged in the performance of a governmental function. In the Dugan case, the court held that a Post Exchange was not liable for federal internal revenue special taxes as a retail liquor dealer, and in the Woog case, the court held that the failure of a Post Exchange officer to properly account for Post Exchange funds justified a deduction from the pay of such Post Exchange officer.

■ The President of the United States, the heads of the various departments of the United States, to whose opinions the courts always give great weight, New York ex rel. Rogers v. Graves, 299 U.S. 401, 406, 407, 57 S.Ct. 269, 81 L.Ed. 306, including the Attorney General, the Comptroller of the Treasury, the Comptroller General, the Postmaster General, the Secretary of War, the Secretary of the Navy, and the Commissioner of Internal Revenue, have in many instances held that Post Exchanges and their predecessors were federal instrumentalities. Executive Order 6589, February 6, 1934; Cir. 54 W.D.1932; 21 Comp.Dec. 109; 3 Comp. Gen. 518; Cir. 48, W.D.1933; 22 Op.Atty. Gen. 426, 428.

By Executive Order dated February 6, 1934, No. 6589, the President states that "this order shall apply to and include all vehicles owned and operated by the United States Government and by legally authorized instrumentalities thereof, such as post exchanges, company and recreational organizations of the Army and Marine Corps, and ship's service activities of the Navy; the Panama Railroad Co.; and the Republic of Panama," and the Supreme Court held in New York ex rel. Rogers v. Graves, supra, that the Panama Railroad Company, placed by this order in the same category as Post Exchanges, was an instrumentality of the United States.

■ The parties hereto have stipulated that if the complainants should prevail with respect to the issues raised as to the Post Exchange, then the relief granted by the court should be applicable to the Marine Corps Post Exchanges, ships' stores, officers clubs and noncommissioned officers' clubs described in the amended bill of complaint.

The court, therefore, holds and declares that the findings herein and the conclusions reached apply to all of the aforementioned Post Exchanges, ships' stores, officers' clubs and noncommissioned officers' clubs.

The issue was raised herein as to whether or not this matter was properly triable before a three-judge court, and this issue should be decided in this opinion.

This is an action for a declaratory judgment and for injunctive relief against an order of the South Carolina Tax Commission applying the provisions of Act No. 574, Acts of 1928 of the General Assembly of the State of South Carolina, as amended, to the Post Exchange at Fort Jackson, South Carolina, and its activities conducted within the Fort Jackson Military Reservation, South Carolina.

■ This action is instituted pursuant to the provisions of Section 274d of the Judicial Code, as amended. Injunctive relief from the collection of the taxes assailed is prayed

for. The amendment of August 21, 1937, to Section 24, First, of the Judicial Code, c. 726, 50 Stat. 738, which reads, "Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State." 28 U.S.C.A. § 41(1).—is not applicable to this case since it is alleged in the amended bill of complaint and admitted by the defendants' answer to the amended bill of complaint that the complainants have no plain, speedy, and efficient remedy at law or in equity in the courts of South Carolina.

■ The jurisdiction of the District Court thus appearing, the sole question remaining is whether this court, sitting as a three-judge court, has jurisdiction to consider and decide and to grant the injunctive relief prayed for. We do not think that it has. This is not a case for a three-judge court under section 266 of the Judicial Code, but one to be decided by the District Judge of the District who sits as a member of the three-judge court. The attack is made, not upon the constitutionality of the state taxing act nor upon orders of the State Tax Commission, but upon efforts of the Commission to enforce the taxing act against an instrumentality of the federal government in violation of the immunity from state taxation which such instrumentality enjoys under the Constitution of the United States. This, however, is no more than unlawful action on the part of administrative officers, and the constitutionality neither of the state statute nor of an administrative order made under authority of a state statute is involved. Phillips v. United States, 61 S.Ct. 480, 85 L.Ed. ——; Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249; Ex parte Hobbs, 280 U.S. 168, 50 S.Ct. 83, 74 L.Ed. 353. In reality nothing is involved in this case except the determination of the status of the Post Exchanges within the meaning of the federal statute; for everyone concedes that the state taxing statute cannot be applied so as to tax a federal instrumentality without the consent of Congress and that the federal statute does not give consent to the taxing of federal instrumentalities.

■ We are of opinion, for the reasons above stated, that the District Judge of the District has exclusive jurisdiction to pass

upon the case; but inasmuch as the other judges sitting with him are in entire accord as to the findings and decree to be entered, same will be signed by all three judges, so that in the event that it should hereafter be determined that the case was one for three judges under the statute, an appropriate decree will have been entered. In the view that we take of the case, however, it is the action of the District Judge of the District which will give validity to the decree and same should be considered, not as the decree of a three-judge court, but as his decree, from which appeal lies to the Circuit Court of Appeals and not to the Supreme Court.

Injunction granted.