**BLEUER v. UNITED STATES.**

**Civ. No. 2543.**

United States District Court
E. D. South Carolina,
Florence Division.

Dec. 21, 1950.

P. H. McEachin, Florence, S. C., for plaintiff.

Russell D. Miller, Asst. U. S. Atty., Florence, S. C., for the Government.

WARING, District Judge.

This is a suit against the United States upon an alleged contract of employment. Plaintiff demanded a jury trial. Upon the call of the case, it appeared that this action was brought under authority of Title 28, U.S.C. § 1346 (2). This is what was formerly and commonly called the Tucker Act. It is well established that cases brought under the Tucker Act are triable before the Court without a jury. This matter, being brought to the attention of Plaintiff's counsel, they acquiesced in this point of view and the cause was thereupon tried by the Court sitting alone.

The Plaintiff is a resident of Florence County, and the Defendant owned and operated a military establishment known as the United States Marine Corps Headquarters at Parris Island, South Carolina. All of these places are within the Eastern District of South Carolina and, therefore, within the jurisdiction of this Court.

The facts are as follows:

At the Parris Island Marine Corps establishment, there was an organization known as the Commissioned Officers' Mess which was organized in accordance with regulations promulgated by the United States Marine Corps. Sometime in August, 1946, the Plaintiff was employed on a temporary basis as manager of this Officers' Mess. His duties were to manage and supervise the purchase or requisition of goods and supplies, especially food and drink, and generally to operate and run a restaurant and recreation club or mess for officers of the Marine Corps. While temporarily employed, the Plaintiff drew a salary of $200 per month and in addition had board and lodging which he estimated to be worth $150 monthly. On or about November 15, 1946, the Board of Governors of this Commissioned Officers' Mess authorized the employment of the

Plaintiff for a period of one year at a monthly salary of $350 cash, with board and lodging in addition, and the Plaintiff accepted and entered upon his duties. In April, 1947, the governing officials of the Mess dismissed the Plaintiff effective the end of April, and he was paid up to May 1, 1947, and his connection was then severed with the Marine Corps.

The Answer admitted the salient facts above set forth but denied that the contract of employment was ever approved by the Commanding Officer and alleged that the dismissal was caused by the inefficient and incompetent acts of Plaintiff in the management of the club. When the cause came on for trial, the Plaintiff offered in evidence (Exhibit 4) "letter of instruction, #949". This is a form of bulletin, published under authority of the Marine Corps, providing regulations for Officers' Messes. The important and pertinent parts of these regulations may be summarized as follows:

There are two types of Officers' Mess. One is known as a "Closed Mess" and the other as an "Open Mess". The two have much in common, but there are certain salient facts differentiating them. Under part 2 of this bulletin, definitions are set forth for the difference in the two forms of mess. A "Closed Mess" appears to be for Commissioned Officers only and no other persons may use the same excepting some specified groups such as governmental officers or agents on official business connected with the Marine Corps. On the other hand, an "Open Mess" is one in which members may invite guests under various conditions to be determined by the Commanding Officer. A very important difference between the two types of mess is that in the "Closed Mess", civilians may be employed and paid from appropriated funds. On the other hand, for an "Open Mess", "employment of civilians paid from appropriated funds

in Commissioned Officers' Messes, Open, is prohibited". It is further provided that in an "Open Mess", "civilians may be employed but shall be paid from mess funds only". Another paragraph of the regulations provides: "9. No civilian employees paid by appropriated funds are authorized for a Commisioned Officers' Mess, Open". The foregoing excerpts, all of which come from Plaintiffs Exhibit 4, clearly and decisively indicate that civilian employees (of which the Plaintiff was one) are not to receive payment of compensation from "appropriated funds" or in other words, they are not to receive money from the government but must look for their compensation entirely to the funds taken in or handled by the mess or club.

This suit is one against the United States. In case the Plaintiff were given a verdict the judgment would have to be paid from the Treasury of the United States from funds appropriated by the Congress to meet judgments against the United States. The excerpts clearly indicate that the Plaintiff, who was a civilian employee, cannot expect to be paid from the funds of the United States. If he has any right of action (and this Court expresses no opinion as to whether he has or not) it would be against the organization, or officers or personnel of the Officers' Mess and not against the United States.

When this exhibit was introduced, and after hearing the Plaintiff's testimony, and it being admitted in open court by the counsel for the respective parties that the Officers' Mess at Parris Island was an "Open Mess", and not a "Closed Mess", I felt constrained to dismiss the suit since the Plaintiff failed to show a cause of action against the named Defendant, the United States of America. Accordingly it is

Ordered, that this cause against the United States of America be and the same is hereby dismissed.