PULASKI CAB COMPANY
v.
UNITED STATES.

Fred FOSTER and George Morris,
Co-Partners, d/b/a Independent Cab
Company,
v.
UNITED STATES.

Nos. 328-56, 329-56.

United States Court of Claims.

Jan. 15, 1958.

Robert D. Fitzgibbon, Jr., St. Louis, Mo., Lowenhaupt, Mattingly, Chasnoff, Freeman & Holland, St. Louis, Mo., on the brief, for plaintiffs.

Justin S. Colin, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

REED, Justice (Ret.) sitting by designation, delivered the opinion of the court:

The plaintiffs, taxicab operators, seek to recover from the United States sums of money paid by them to the Fort Leonard Wood Exchange pursuant to contracts between the parties. Defendant has moved for summary judgment on the ground that no genuine issue of fact is involved and as a matter of law, plaintiffs' petitions must be dismissed. For the legal conclusion to show that there is no jurisdiction in this court, reliance is placed upon this court's opinion in Borden v. United States, 116 F.Supp. 873, 126 Ct.Cl. 902.

The facts as shown by the pleadings and exhibits attached to the defendant's motion are as follows:

On October 16, 1950, plaintiffs Fred Foster and George Morris, doing business as the Independent Cab Company, hereinafter referred to as Independent, entered into a revocable agreement with the Fort Leonard Wood Exchange. This agreement allowed Independent to operate a taxicab service within the confines of Fort Leonard Wood. In return for this privilege Independent agreed to and did pay to the Fort Leonard Wood Exchange, hereafter referred to as Exchange, ten percent of its daily gross receipts. On October 31, 1950, a like agreement was entered into between plaintiff Pulaski Cab Company, Inc. and

the Exchange. In addition. to what may be termed standard contract provisions, the contracts provided that Exchange could cancel at any time upon giving ten days' notice. Also, Article III (2) (d) of the agreements contained the following language:

"This Agreement is not a United States Government contract but is solely the obligation of the party of the first part [Exchange]."

On August 9, 1951, the Commanding General of Fort Leonard Wood ordered that the collection of ten percent of the plaintiffs' daily gross receipts by the Exchange be stopped. Accordingly, plaintiffs' contracts were cancelled and new agreements entered into which deleted percentage payments to the Exchange. No question of power to execute the contracts or their validity, in any respect, is raised by this motion for summary judgment.

Plaintiffs did not file a brief or exhibits in opposition to the defendant's motion and apparently concede the correctness of the facts shown therein, including affidavits that the moneys in issue paid under the ten percent arrangement are in the hands of the Exchange.

Plaintiffs have brought this action against the United States to recover amounts paid the Exchange pursuant to the October 16, 1950, and October 31, 1950, agreements claiming that these payments were illegal, coerced (or otherwise there would be no contract), and unauthorized. Therefore, it is asserted the exaction gives rise to an obligation on the part of the United States to make refund. The petitions allege that jurisdiction to determine the claims rests with this court by virtue of section 1491 of Title 28 United States Code (Supp. III, 1952 Ed.), which provides in pertinent part:

"The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or

implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

■ We are of the opinion that plaintiffs must fail in their attempt to invoke the jurisdiction of this court.

In Borden v. United States, supra, this court held that obligations arising out of a contract with a Post Exchange were not liabilities of the United States upon which suit could be brought in this court. That was a suit upon an agreement of employment with the Army Exchange Service, European Theater. The Exchange had withheld the employee's pay because of theft of money, under his charge, for which the court thought the employee was not liable. The case, however, turned on the non-suability of the United States "on a contract of employment which is signed by the Army Exchange Service," 116 F.Supp. at page 877, 126 Ct.Cl. at page 909. This court, relying upon the statement in the case of Standard Oil Co. of California v. Johnson, 316 U.S. 481, 485, 62 S.Ct. 1168, 86 L.Ed. 1611, that the United States assumed none of the financial obligations of the Exchange, held the suit against the United States was improper.

Plaintiffs in this action are faced with the same jurisdictional problem. Their contract was with the Fort Leonard Wood Exchange and not the United States. Under 28 U.S.C. § 1491, suits may be brought in this court *only* against the United States.

■ We do not have the Fort Leonard Wood Exchange, the other contracting party in these cases, before the court. The "government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work." It may endow them with immunity, "but always the question is: has it done so?" Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 388–389, 59 S.Ct. 516, 517, 83 L. Ed. 784. Speaking of such an instrumentality it was said in Sloan Shipyards

Corp. v. U. S., etc., Fleet Corp., 258 U.S. 549, 567, 42 S.Ct. 386, 388, 66 L.Ed. 762:

"* * * An instrumentality of Government he might be and for the greatest ends, but the agent, because he is agent, does not cease to be answerable for his acts."

The present issue is the liability of the United States. The use of the Post Exchange for the benefit of servicemen rests on the authority granted in 1875 for regulations.[1] Congressional approval of the establishment of the Post Exchange is evident from repeated legislation in their aid.[2] At the present time the regulations are embodied in Army Regulations 60–10, Exchange Service, General Policies, Sec. II, Par. 17. At the time of the execution of these contracts the governing regulation was SR 60–10–1, Par. 21.

It read as follows:

"e. Contracts involving exchanges are not Government contracts and such distinction will be stated therein."

Such regulation required the inclusion in the contract under consideration of the sentence quoted *supra,* page 2, to the effect that the Government was not liable. This position follows naturally from the fact that the operation of the Post Exchanges is carried on from nonappropriated funds.

In Standard Oil Co. of California v. Johnson, supra, it was specifically said that "the government assumes none of the financial obligations of the exchange." That may not be a definitive holding that the Government is not liable for the debts of the Exchange but it points in that direction. Upon that issue the cases from courts that have considered phases of the problem of the United States' liability are not agreed. In Faleni v. United States, D.C., 125 F. Supp. 630, it was held that an employee of Ships Service, an activity closely akin to a Post Exchange, was not an employee of the United States. The contrary result was reached in Daniels v. Chanute Air Force Base Exchange, D.C., 127 F. Supp. 920. See also Nimro v. Davis, 92 U.S.App.D.C. 293, 204 F.2d 734.

One case has a comment directly in point for the present litigation. Edelstein v. South Post Officers Club, D.C., 118 F.Supp. 40. There it was said:

"* * * Indeed they are not claims against the United States. The plaintiff contracted with notice of the legal status of the Club, its immunity to suit, and the absence of responsibility of the United States."

It was held in Bleuer v. United States, D.C., 117 F.Supp. 509, 510, that the United States was not liable on contract with a civilian employee of a Commissioned Officers' Open Mess, i. e., a mess to which officers could invite guests. The rationale for the conclusion was that the regulations for Officers' Messes provided:

"9. No civilian employees paid by appropriated funds are authorized for a Commissioned Officers' Mess, Open."

As the plaintiff could not receive compensation from appropriated funds, he could not be paid by the Government "but must look for their compensation entirely to the club funds." The case does not refer to Standard Oil Co. v. Johnson, supra.

Resolution of the issue as to the liability of the United States in this court for obligations of this Post Exchange starts from this basis laid down by the Supreme Court in the Johnson case:

"From all of this, we conclude that post exchanges as now operated are arms of the government deemed by it essential for the performance

1. Standard Oil Co. v. Johnson, supra, 316 U.S. at page 483, 62 S.Ct. 1168.

2. Standard Oil Co. v. Johnson, supra, 316 U.S. at page 484, 62 S.Ct. 1168, 1170. See United States v. Query, D.C., 37 F.Supp. 972. The Query judgment was vacated on grounds not here material on the same day that Standard Oil Co. v. Johnson, supra, was decided. See 316 U.S. at page 486, 62 S.Ct. 1168.

of governmental functions. They are integral parts of the War Department, share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under, the constitution and federal statutes." 316 U.S. at page 485, 62 S.Ct. at page 1170.

That conclusion required further examination by the Supreme Court of California of the effect of the California Motor Vehicle Fuel License Tax Act which was inapplicable to fuel sold the United States "or any department thereof for official use of said government." Gen. Laws 1937, Act 2964, § 10. The fact that the Post Exchange was an instrumentality of the Government was not enough, as the Supreme Court said, for it to determine, as a matter of Federal law, the applicability of the state act. That depended upon the meaning the California court gave to its act.

■■ The Exchanges as governmental arms and instrumentalities have governmental immunities, and we assume their liabilities also. The liability of the United States depends upon its assumption of such liabilities express or implied. An agent without authority so to do cannot make the United States liable for its contracts.[3] As the Supreme Court has said in Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10:

> " * * * Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power."

We conclude that the United States has not consented to be sued upon a contract of this instrumentality which includes within its terms a specific declaration of governmental nonliability. It could hardly be thought that the United States is responsible for liabilities of the United Service Organizations or the Red Cross, however essential may be their contribution to the performance of governmental functions. Because the operation of Post Exchanges is "deemed essential" for governmental operation, it does not follow that the Government is any more liable for their contracts than they would be for a privately staffed agency that performed under contract the same functions.

Defendant's motion for summary judgment is granted, and plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

WHITAKER, Judge (concurring).

It is abhorrent to me that anyone should be able to breach a contract entered into with another and remain immune from liability for his wrongdoing. It is even more abhorrent, to me, for the sovereign to do a wrong and to refuse redress for it.

. Congress felt the same way when it passed the original Court of Claims Act in 1855, and when, in subsequent years, it has enlarged it and made it more effective. Those Acts made the United States liable on its contracts, express or implied, as in all good conscience it should be. It has made this court the "keeper of the nation's conscience," as an eminent lawyer once said many years ago, which was repeated only recently by an equally eminent lawyer.

There can be no doubt that a post exchange is an instrumentality of the

3. See In re Floyd Acceptances, 7 Wall. 666, 19 L.Ed. 169; Eastern Extension, Australasia & China Tel. Co. v. United States, 251 U.S. 355, 363, 40 S.Ct. 168, 64 L.Ed. 305; Wilber Nat. Bank of Oneonta, N. Y. v. United States, 294 U.S. 120, 123, 55 S.Ct. 362, 79 L.Ed. 798.

Army of the United States. They are recognized by Army Regulations, and regulated by them. They are recognized by Congress, which from time to time has appropriated money in furtherance of their activities. They are administered by the Army. They are run for the benefit of the Army.

When one of them is disbanded, its surplus funds are paid into the Treasury of the United States, to be used for the benefit of other post exchanges.

These things being true, I am unable to see why a contract executed by an authorized official of a post exchange is not a contract of the United States. If it is, the Congress has made the United States liable for a breach thereof.

If the United States is not liable, the other contracting party, who has been wronged, is without redress. A post exchange is not a legal entity, subject to suit. It is not incorporated. It cannot be said to be an association of individuals subject to suit. Who are the individuals that make up the association? Are they the enlisted men and officers stationed at the post? And, if the assets of the exchange are not sufficient to pay a judgment rendered against it, are these officers and enlisted men individually responsible? Are they responsible even though they had no part in setting up the exchange and had no control over its management?

If the United States is not liable and the exchange is not suable, then the party wronged has no redress. This offends my sense of justice. This is intolerable in an enlightened democratic society.

I went into this question in more detail in my dissenting opinion in Borden v. United States, 126 Ct.Cl. 902, 909, 116 F.Supp. 783. I respectfully refer any one interested to that opinion.

However, there is present in this case one element not present in the Borden case. It appeared in both cases that the Army Regulations said that contracts with the exchange were not contracts with the United States; but in the Borden case it did not appear that this was called to the attention of the other contracting party; whereas in the case at bar the contract itself said: "This agreement is not a United States Government contract but is solely the obligation of the party of the first part," which was the exchange.

I suppose if an agent makes a contract for the benefit of his principal and expressly stipulates that only he, the agent, shall be liable thereon, and not the principal, and the other party agrees to this stipulation, it is binding, and the principal is absolved from liability. Since that has been done in this case, I agree the United States is not liable. But, except for this agreement, I think the United States would be liable.