**UNITED STATES of America, Appellant,**

v.

**Richard A. HOLCOMBE, Jr., Appellee.**

**No. 8035.**

United States Court of Appeals Fourth Circuit.

Argued March 21, 1960.

Decided April 18, 1960.

# 144

Mark R. Joelson, Atty., Dept. of Justice (George Cochran Doub, Asst. Atty. Gen., Joseph S. Bambacus, U. S. Atty., Richmond, Va., and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Howard I. Legum, Norfolk, Va. (Louis B. Fine, Norfolk, Va., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOBELOFF, Chief Judge.

The question to be decided is whether an Officers' Mess at a naval base is a "federal agency" within the meaning of the Tort Claims Act, so as to make the United States liable for the negligence of an employee of the mess.

The plaintiff, Richard A. Holcombe, Jr., was civilian manager of the Commissioned Officers' Mess at the United States Naval Air Station, Patuxent River, Maryland. On April 12, 1956, he instructed Loretta Roller, also an employee of the Officers' Mess, to proceed in his personal automobile to the Post Commissary for the purpose of obtaining salad dressing needed for a luncheon at the Mess. While driving the plaintiff's car on this errand, Miss Roller lost control of the vehicle, and it left the road and was completely destroyed.

Holcombe brought his action against the Government in the District Court for the Eastern District of Virginia under the Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 and 2674, to recover damages for the loss of his automobile. At the first trial, the District Court dismissed the complaint on the ground that, under federal law, Miss Roller's operation of the automobile was not within the scope of her employment. On appeal, this court vacated the judgment, as the Government then conceded that under Maryland law, applicable as a result of Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761, Miss Roller was acting within the scope of her employment. At that time, the Government urged several other grounds for affirming the judgment, but we remanded the case for the District Court to consider the additional defenses. See Holcombe v. United States, 4 Cir., 1958, 259 F.2d 505.

At the second trial, the District Court rejected the Government's contentions and awarded Holcombe, $1,325, representing the value of his automobile plus the articles in it which were destroyed, and the Government now appeals. Several of the defenses raised below are not urged on this appeal, and, because of the Government's position with regard to them, need not be considered by us.[1] The Government stands on the sole contention that the United States has not waived immunity from liability for torts of civilian employees of "nonappropriated instrumentalities," such as this Officers' Mess as such instrumentalities are not "federal agencies" within the meaning of the Tort Claims Act. The Government admits that the Commissioned

---

[1] The additional defenses, not relied upon here, were: (1) the plaintiff, also being an employee of the Officers' Club, is precluded from recovering because of his status; (2) the fellow-servant doctrine defeats his claim; (3) the plaintiff was contributorily negligent because he knew that Miss Roller was physically handicapped in such a way as to affect her driving ability. The Government's brief states:

"We do not, in any way, concede the correctness of the District Court's rulings on the other issues raised by the Government below. However, since we are firmly convinced that the United States cannot be held liable for torts committed by civilian employees of nonappropriated fund instrumentalities, we rest this appeal squarely on the determination of this question. * * *"

Officers' Messes are "an integral part of the Navy establishment and, as such, are instrumentalities of the Government. * * *" It contends, however, that while such an establishment is otherwise a "federal agency," it still does not come within the purview of the Tort Claims Act, because it is a "nonappropriated fund instrumentality," that is to say, it is not supported by appropriations out of the national treasury, but is financed by its own operations. We find no warrant for interpolating such a restriction into the statute.

The definition of "federal agency," contained in the act itself, does not lend support to the Government's contention. The statute, 28 U.S.C.A. § 2671, provides in part:

> " 'Federal agency' includes the executive departments and independent establishment of the United States, and corporations primarily acting as, instrumentalities or agencies of the United States but does not include any contractor with the United States."

No reason is given by the Government why, looking to the terms of the act, an appropriated activity of the Navy should be deemed included in one of the above categories but not a nonappropriated activity. The language of the statute making no such distinction, it would appear to include both.

The only case cited by either side, which is exactly in point, is Daniels v. Chanute Air Force Base Exchange, D.C. E.D.Ill.1955, 127 F.Supp. 920, where liability was held to exist under the Tort Claims Act for negligence of a civilian employee of an Air Force Base Exchange, a nonappropriated instrumentality. Another case, Grant v. United States, D.C.E.D.N.Y.1958, 162 F.Supp. 689, 693, affirmed on this point in 2 Cir., 1959, 271 F.2d 651, involved the negligence of an officer of the United States Merchant Marine who was operating a ship's service store, a nonappropriated part of the United States Merchant Marine Academy. The court upheld judgment for the plaintiff, citing the Daniels case, supra. The Government seeks to distinguish Grant because there the employee was a member of the armed services, where as here Miss Roller was a civilian employee. However, the court in the Grant case did not base its decision on any such distinction, but, rather, reasoned that there was liability because a ship's service store was "an instrumentality of the United States Government" and that the employee was conducting a governmental activity.

Bearing significantly upon the present issue is the language of the Supreme Court in Standard Oil Co. of California v. Johnson, 1942, 316 U.S. 481, 485, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611. That case concerned a California gasoline tax which was, by the terms of the state statute, inapplicable to gasoline sold to the United States. The California Supreme Court, 19 Cal.2d 104, 119, P.2d 329, held that a vendor of gasoline sold to an Army Post Exchange was obligated to pay the tax, as post exchanges were not "the government of the United States or any department thereof." In reversing, the Supreme Court of the United States said:

> " * * * we conclude that post exchanges as now operated are arms of the Government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department, share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under the constitution and federal statutes."

Since the various armed services are parts of the "executive departments" of the United States within the Tort Claims Act, and since Officers' Messes, like post exchanges, are "integral parts" of the armed services, it would follow that they are expressly included within the definition of "federal agency" in the act.

It is also argued that as it has been decided in certain cases that the United States is not liable in contract for the financial obligations of its nonappropriated instrumentalities, the same rule

should apply under the Tort Claims Act. In Borden v. United States, 1953, 116 F. Supp. 873, and Pulaski Cab Co. v. United States, 1958, 157 F.Supp. 955, the Court of Claims held that under the Court of Claims Act, 28 U.S.C.A. § 1491, the United States could not be sued on contracts made by nonappropriated post exchanges. The Court of Claims primarily based its holding on a dictum in Standard Oil Co. of California v. Johnson, supra, [316 U.S. 481, 485, 62 S.Ct. 1170.] that the "Government assumes none of the financial obligations of the exchange." In addition to relying on this dictum, both of the above Court of Claims cases also pointed out that it was provided in Army regulations that contracts of post exchanges "are solely the obligation of the exchange." [116 F. Supp. 877.] Thus, in those cases, the post exchanges had been denied authority to bind the United States contractually. No similar problem of lack of authority exists in the instant case. Moreover, even if we assume that the dictum in the Johnson case required a holding that the United States was not liable on contracts of nonappropriated instrumentalities of the Government, that case was decided prior to the passage of the Tort Claims Act in 1946 and would not affect the express language in the statute subjecting the Government to liability for torts committed by servants of federal agencies.

■ An Officers' Mess being an integral part of the military establishment, and an agency of the Government according to the usual meaning of the word, and having been held to be such in other contexts, it is difficult to escape the conclusion that the Federal Tort Claims Act encompasses it. The policy of the act is to fix Government liability under the doctrine of *respondeat superior* just as if the United States were a private employer. In the absence of any restriction in the statute, a court cannot read into it the exception contended for.

Affirmed.