October 14, 1977

# 77–58  MEMORANDUM OPINION FOR THE GENERAL COUNSEL, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION

## Personal Tort Liability of Regional Fishery Management Council Members and Staff

The Deputy General Counsel of the Department of Commerce has requested this Department's review of your memorandum to determine whether we concur with its conclusions. The memorandum addresses the subject whether members of Regional Fishery Management Councils may be personally liable in tort as a result of their official participation in the Councils. We have reviewed the memorandum and the applicable case law, and believe its conclusions reached are sound.

Regional Fishery Management Councils were created by the Fishery Conservation and Management Act of 1976.[1] They were created to prepare, monitor, and revise regional management plans for the various fisheries falling within their respective jurisdictions. The precise question is whether a federally created and maintained entity whose purpose is to assist in implementation of a national program is an "independent establishment of the United States . . . ," and thereby a "Federal Agency" under the umbrella of the Federal Tort Claims Act.[2] A body of law has developed concerning the question whether an entity is a "Federal Agency." It stresses the source of funding for the entity and the functions of the entity as two important factors. The funding factor was substantially deflated in importance by the recent Supreme Court decision in *United States* v. *Orleans.*[3] In *Orleans* the Court held that a "community action agency," although subject to numerous Office of Economic Opportunity rules and regulations and funded largely by Federal funds, was not an entity that could properly be viewed as a "Federal Agency" for the purpose of the Federal Tort Claims Act. Although legal analysis in that case is interesting, it does not relate directly to the problem of Regional Fishery Council members and their

---

[1] 16 U.S.C. § 1801, *et seq.*
[2] 28 U.S.C. § 2671.
[3] 425 U.S. 807, (1976).

staff, because the Councils were established to execute a Federal function while utilizing "national standards." [4] Their function is to assist the Secretary of Commerce in his official endeavors.[5]

The community action agency discussed in *Orleans* was a nonprofit private corporation and as such was held by the Court to have the status of a "contractor." [6] In the present matter we do not think the traditional distinction between "government agency" and "contractor" applies.[7] Rather, the Councils come within the concept of an entity which is an "integral part" of a Federal agency. If being an integral part of a "Federal Agency" means facilitating the accomplishment of an agency's mission, then the Councils are indeed "Federal Agencies" under the Federal Tort Claims Act. They are indispensable elements in the statutory scheme of the 1976 Act, and are an integral part of the Department of Commerce's statutory mission under that Act.[8]

In *United States* v. *Holcombe*,[9] where property was allegedly damaged through the negligence of a civilian employee of the commissioned officers' mess, the Sixth Circuit held that the mess was an "integral part" of the military establishment and thus an Agency of the Government under the Federal Tort Claims Act. This ruling was issued despite the fact that the mess was a "nonappropriated fund instrumentality," *i.e.,* an entity not supported by appropriations out of the National Treasury. The Councils were created by Federal statute and vested with a statutory delineation of their functions. We think this militates toward a finding that they are "Federal Agencies" under the Federal Tort Claims Act and are protected by that degree of immunity the Constitution and Federal statutes provide Federal agencies.[10]

Finally, the issue of State employees serving as Council members is no more complex than the threshold issue whether the Councils are Federal Agencies. It has been recognized that an employee of a local government may be "loaned" by that government to the Federal Government so as to become a Federal employee for purposes of the

---

[4] *See, e.g.,* 16 U.S.C. §§ 1801(a)(6)–(7) and 1853(a)(1)(c).

[5] In *Orleans,* the Court focused, *inter alia,* on the local nature of the community action agency. *See* 16 U.S.C. § 1852(h).

[6] "A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.' " *Orleans,* 425 U.S. at 814 quoting from *Logue* v. *United States,* 412 U.S. 521, 528 (1973).

[7] This distinction seems to apply where the entity whose status is in issue is engaged in an undertaking which has private as opposed to governmental overtones. *Cf., Strangi* v. *United States,* 211 F. 2d 305 (5th Cir. 1954), and *Hopson* v. *United States,* 136 F. Supp. 804 (D. Ark. 1956).

[8] *Standard Oil Co. of California* v. *Johnson,* 316 U.S. 481 (1942), was one of the first cases that adopted the "integral part" test. There a U.S. Army Post Exchange (PX) was the entity involved and, the Court held:

We conclude that post exchanges as now operated are arms of the Government deemed by it essential for the performance of Governmental functions. They are integral parts of the War Department, share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under the Constitution and federal statutes. *Id.* at 485.

[9] 277 F. 2d 143 (4th Cir. 1960).

[10] *See* note 2, *supra.*

Federal Tort Claims Act.[11] The fact that his salary comes from a source other than the Federal Government does not alter his Federal status.[12]

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[11] *See, Fries* v. *United States,* 170 F. 2d 726, 731 (6th Cir. 1948).

[12] *See, United States* v. *Holcombe,* 277 F. 2d at 144–146, *supra,* note 9, and *Martalano* v. *United States,* 231 F. Supp. 805 (D. Nev. 1964).