### SWIFF–TRAIN COMPANY

v.

### UNITED STATES of America.

Civ. A. No. SA69–CA286.

United States District Court,
W. D. Texas,
San Antonio Division.

June 24, 1970.

Jack A. Efron, Levey & Goldstein, San Antonio, Tex., for plaintiff.

Seagal V. Wheatley, U. S. Atty., San Antonio, Tex., for defendant.

## MEMORANDUM OPINION

SPEARS, Chief Judge.

In this case the Government has filed motions to dismiss and for summary judgment, contending that since it did not consent to this suit it has no liability for the obligations of the Fort Sam Houston Guest House Fund, a nonappropriated fund activity of the United States. For the reasons hereinafter set forth the motions are overruled.

On September 18, 1968, a written contract between Midwest Carpet Distributors and Guest House obligated Midwest to install wall-to-wall carpeting in a portion of the premises operated by Guest House. It further provided, among other things, that all checks were to be made payable to both Midwest and its supplier, Swiff-Train Company, the plaintiff herein. However, even though

Swiff-Train furnished supplies to Midwest for use on the job, with the full knowledge of Guest House, and as contemplated by the contract, the check issued by Guest House covering the entire amount due, was made payable to Midwest only, from which payment Swiff-Train received nothing, and this suit is brought to recover the sum of $7,250.60, representing the value of the materials furnished by Swiff-Train.

If the facts as stated to this Court are true, the plaintiff is a third party beneficiary under the contract between Midwest and the Guest House [1]; and despite several authorities from other Circuits to the contrary, all of which appear to have misconstrued Standard Oil Co. of California v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942), this Court is of the opinion that plaintiff has a cause of action against the United States.

The Supreme Court held in *Johnson*, supra, that post exchanges, which are nonappropriated fund activities, are "integral parts of the War Department, share in fulfilling the duties entrusted to it, and partake of whatever immunities it may have under the constitution and federal statutes." Although this would seem to have been ample authority

for holding that an exchange contract is an obligation of the United States, the later cases have held that the United States cannot be sued on a contract signed by an exchange.[2] In so doing, those Courts probably have "confused the source of funds supporting the exchange with the legal status of the exchange itself", by seizing upon dictum in *Johnson*, wherein it was noted that "(t)he Government assumes none of the financial obligations of the exchange", which, in light of its actual holding that an exchange is an integral part of the Government, must have been "the Court's way of stating, by way of description, that appropriated funds of the Government are not used to discharge the financial obligations of the exchange." See Navy Contract Law, Second Edition, 1959, Section 4.33 at page 200, for an enlightening analysis of the *Johnson* dictum.

By the Tucker Act, District Courts are given original jurisdiction of any claim against the United States founded upon any express or implied contract, 28 U.S. C.A. § 1346(a) (2), and no Army regulation in derogation thereof can stand.[3] In addition, although that statute was in effect at the time *Johnson* was decided, it was not before the Court, so it is dif-

---

1. There is nothing in the record of this cause to suggest that Swiff-Train had notice the United States would claim it was not liable on the contract, or that there was any objection on the part of Guest House to the joint payment provision. On the contrary, during oral argument plaintiff's counsel stated that the proof will show that Swiff-Train would never have supplied the materials to Midwest for Guest House if it had not been able to obtain the protection afforded by the joint payment provision of the contract, and that all of the facts and circumstances involved were fully explained to and acquiesced in by the Guest House contracting officer.

2. See Borden v. United States, 116 F.Supp. 873, 126 Ct.Cl. 902 (1953); Jaeger v. United States, 129 U.S.App.D.C. 319, 394 F.2d 944 (1968); Bowen v. Culotta, 294 F.Supp. 183 (E.D.Va.1968); and Edelstein v. South Post Officers Club, 118 F.Supp. 40 (E.D.Va.1951). Compare Nim-

ro v. Davis, 92 U.S.App.D.C. 293, 204 F.2d 734 (1953), cert. den., 346 U.S. 901, 74 S.Ct. 229, 98 L.Ed. 401 (1953), where the suit was dismissed because it was in reality an action against the United States, and since the sum involved was in excess of $10,000 the Court lacked power to hear the case. Apparently, therefore, except for that jurisdictional question, recovery may have been permitted. In this connection, see Government Contracts, McBride and Wachtel, Col. 6, pages 43–62.

3. The contract in this case did not recite any Army Regulation, but counsel have treated as applicable the regulation referred to in Borden v. United States, 116 F.Supp. 873 at 877, reading as follows: "Exchange contracts are solely the obligation of the exchange. They are not Government contracts and the distinction between exchange contracts and Government contracts will be observed and clearly indicated at all times."

ficult to see how anyone's rights thereunder could be considered as having been restricted by that decision.

Under the Tort Claims Act, 28 U.S.C.A. § 1346(b), immunity against tort liability is waived by the United States in pertinent language very much like that used in the Tucker Act with respect to contracts; and a federal agency, as defined in 28 U.S.C.A. § 2671 relating to tort claims procedures, includes a nonappropriated fund instrumentality. Holcombe v. United States, 176 F.Supp. 297 (E.D.Va.1959), affirmed, 277 F.2d 143; and Daniels v. Chanute A.F.B. Exchange, 127 F.Supp. 920 (E.D.Ill.1955). The *Johnson* case had already held the same thing, and that ruling, as we have seen, has been applied to exchange contracts. See *footnote* 2. So whether the case involving a nonappropriated fund instrumentality arises in contract or tort, the rule is that such an instrumentality is an integral part of the United States, and in either situation the Government should deal with its citizens in the same manner in which its citizens are expected to deal with it.

In view of the similarity between the two statutes (Tucker Act and Tort Claims Act) dealing with claims arising under contract and tort, respectively, and keeping in mind the cases in which it has been held that the United States cannot be sued on an exchange contract, it is interesting to note the completely different manner in which the law has been applied to tort cases involving exchanges.

For example, Daniels v. Chanute A.F. B. Exchange, supra, was a suit for damages by a civilian employee of the exchange, in which the Government sought dismissal on the grounds that it had not consented to be sued, and that it was not the employer of any person or agency alleged to have negligently caused injury to the plaintiff. The Court, however, concluded that an exchange is an agency of the United States and, therefore, is subject to suit under the Tort Claims Act. Similarly, the Fourth Circuit in United States v. Holcombe, 277 F.2d 143 (4th Cir. 1960), which was the same case (on appeal) as Holcombe v. United States, supra, held that an Officers' Mess at a Naval Base is a federal agency within the meaning of the Tort Claims Act, so as to make the United States liable for the negligence of any employee of the mess. Significantly, in each of those cases the Court relied upon the holding in *Johnson*, to the effect that an exchange is in fact an instrumentality of the United States.

Thus the reluctance to hold the United States liable on a contract entered into by an exchange [4] has not carried over into a tort claim involving the same character of Government agency or instrumentality.

■ Guest House is not a separate entity capable of suing or being sued, but since it is an integral part of the Army, and the Army is a part of the Government, the United States is, in the opinion of this Court, just as liable for Guest House's contracts under the Tucker Act, as it is for the negligence of one of Guest House's employees under the Tort Claims Act; and this is so even though *Johnson* was decided prior to the enactment of 28 U.S.C.A. § 1346(b) (Tort Claims Act) and after the passage of 28 U.S.C.A. § 1346(a) (2) (Tucker Act), because the only question in *Johnson* was whether the exchange was an instrumentality of the United States, and, as previously indicated, the Court answered it in the affirmative.

■ It would serve no useful purpose to rehash all that has been said on this subject, but this Court is firmly con-

---

4. The Government, however, has shown no reluctance whatever to bring suit and recover the amount due under a contract between an Air Force Base Exchange and a corporation which was to furnish certain machines and equipment necessary to conduct a concession. United States v. Stevens Enterprises, Inc., 183 F.Supp. 411 (S.D.Miss.1960). Nor has the Government hesitated to prosecute employees of the European Exchange System as persons acting "for or on behalf of" the United States. Harlow v. United States, 301 F.2d 361 (5th Cir. 1962).

vinced that the conclusions herein reached, which afford plaintiff a remedy, are not only supported by equity but by law as well. Unfortunately, what this Court believes to have been an erroneous decision of the Court of Claims in Borden v. United States, 116 F.Supp. 873 (1953), has been repeated over the years to the point where it is now urged as being virtually *stare decisis*. But for the reasons already assigned, and in the absence of a definitive ruling from the Supreme Court or the Fifth Circuit Court of Appeals, this Court is unwilling to be bound by *Borden* and its progeny.

This Court agrees with Judge Whitaker, who dissented in the *Borden* case, that if the United States is successful in maintaining its claim that neither it nor the nonappropriated fund agency can be sued, the plaintiff might very well be without a remedy. Congress did not mean for this to happen. It said as much when it gave its consent for the United States to be sued on its contracts, and there is certainly no reason to read into the Tucker Act restrictions not in the Tort Claims Act, especially when it is considered that the very nature of contract law, as opposed to tort law, presupposes a mutuality of obligations and remedies.

The motions to dismiss and for summary judgment are overruled.